**UNION CARBIDE CORPORATION and Hexion Specialty Chemicals, Inc., Appellants,**

v.

**Oliver D. SMITH and Peggy Ann Bowen Smith, Appellees.**

No. 01–08–00641–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 1, 2009.

Reconsideration En Banc Overruled April 19, 2010.

Karlene Dunn Poll, Baker Botts, L.L.P., Sean Higgins, Wilson, Elser, Moskowitz, Edelman, & Dicker, LLP, Walter Gaylord Lynch, Houston, TX, for Appellant.

Denyse R. Clancy, Baron & Bucc, PC, Dallas, TX, Jed John Borghei, Beverly Hills, CA, for Appellee.

Panel consists of Justices JENNINGS, ALCALA, and HIGLEY.

## OPINION

TERRY JENNINGS, Justice.

Appellants, Union Carbide Corporation and Hexion Speciality Chemicals, Inc. ("Hexion"),[1] challenge the trial court's judgment entered in favor of appellees, Oliver D. Smith and Peggy Ann Bowen Smith, after a jury trial, in the Smiths' suit against Union Carbide and Hexion arising from Oliver's exposure to asbestos and subsequent development of mesothelioma.[2] In its first issue, Union Carbide contends that there is no evidence that it controlled the details of Oliver's work, which is necessary to establish liability against Union Carbide, as a premises owner, for the injuries of Oliver, an employee of an independent contractor working on Union Carbide's premises.[3] In its second issue, Union Carbide contends that the evidence is legally and factually insufficient to establish that asbestos exposure at

---

1. Hexion was formerly known as Borden Chemicals, Inc., Borden, Inc., and The Borden Company.

2. Oliver D. Smith died as a result of the disease following the trial court proceedings.

3. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 95.003 (Vernon Supp. 2008).

its Texas City plant proximately caused Oliver's mesothelioma. Specifically, Union Carbide contends that the Smiths presented "no scientifically reliable evidence of the approximate dose of asbestos" to which Oliver was exposed at Union Carbide's facility, no evidence as to what portion of Oliver's total asbestos exposure occurred while he worked at Union Carbide, and no evidence that the dose of asbestos to which Oliver was exposed at Union Carbide constituted a substantial factor in causing his mesothelioma.

In its first issue, Hexion contends that the evidence conclusively establishes Hexion's affirmative defense that the Smiths' claims are barred under the exclusive remedy provision of the Texas Workers' Compensation Act.[4] In its second issue, Hexion contends that the evidence is legally insufficient to establish that its negligence proximately caused Oliver's mesothelioma. Hexion specifically contends that the Smiths presented no evidence "quantifying the approximate dose of asbestos, if any, that [Oliver] received during his employment by Hexion," of the "threshold below which [Oliver's] disease would not have occurred," or that Hexion's negligence caused Oliver's mesothelioma "or at least caused him to receive a dose" sufficient to cause mesothelioma. In its third issue, Hexion contends that the evidence is legally insufficient to establish that it was foreseeable to Hexion that Oliver would develop mesothelioma from his asbestos exposure. In its fourth issue, Hexion contends that the evidence is legally insufficient to support the jury's finding of gross negligence and the imposition of exemplary damages. In its fifth issue, Hexion contends that the trial court erred in allowing the Smiths' counsel to raise the issue of Hexion's gross negligence for the first time in her rebuttal argument and

thus depriving Hexion of the opportunity to respond to the issue in its closing argument.

We reverse the trial court's judgment and render a take nothing judgment in favor of Union Carbide and Hexion.

## Background

In 2005, Oliver was diagnosed with mesothelioma, a cancer of the lining of his lungs caused by his exposure to asbestos during his employment as a pipefitter and general laborer for numerous employers at numerous work sites throughout his career. The Smiths sued numerous defendants, including Union Carbide, the owner of one of the premises at which Oliver worked as an independent contractor, and Hexion, a successor-in-interest to Smith–Douglas, one of Oliver's former employers. The case proceeded to trial against Union Carbide and Hexion, and the jury found that the negligence of Union Carbide and Hexion, among others, caused Oliver's mesothelioma. The jury further found Union Carbide 2% responsible and Hexion 50% responsible for Oliver's mesothelioma. Finally, the jury found that Hexion was grossly negligent. Pursuant to the jury's verdict, the trial court entered judgment in favor of the Smiths and against Union Carbide and Hexion and awarded the Smiths damages in the amount of approximately $150,000 against Union Carbide and $4 million against Hexion.

## Control

■ In its first issue, Union Carbide argues that the trial court erred in denying its motion for judgment notwithstanding the verdict because the Smiths presented no evidence that Union Carbide controlled the details of Oliver's work, which must be shown to establish its liabil-

4. See TEX. LAB.CODE ANN. §§ 408.001–408.222 (Vernon 2006 & Supp. 2008).

ity as a premises owner for the injuries of Oliver, an employee of an independent contractor employer working on Union Carbide's premises. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 95.003 (Vernon Supp. 2008). Union Carbide asserts that, under Chapter 95, and pursuant to the trial court's jury charge, the Smiths had to prove that it retained or exercised control over Oliver's work. Union Carbide further asserts that evidence showing that it provided its contractors with some limited supplies and specifications does not demonstrate that it retained or exercised control over the manner in which Oliver performed his work.

A judgment notwithstanding the verdict is proper when a directed verdict would have been proper. TEX.R. CIV. P. 301; *Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex.1991). We review both the denial of a motion notwithstanding the verdict and a challenge to the legal sufficiency of the evidence as "no evidence" points of error. *Steinberg v. Comm'n for Lawyer Discipline*, 180 S.W.3d 352, 355 (Tex.App.-Dallas 2005, no pet.). We will sustain a legal sufficiency or "no-evidence" challenge if the record shows one of the following: (1) a complete absence of evidence of a vital fact, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex.2005). In conducting a legal sufficiency review, a court must consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *Id.* at 822. If the evidence allows only one inference, neither jurors nor the reviewing court may disregard it. *Id.* However, if the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then jurors must be allowed to do so. *Id.* A reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls within this zone of reasonable disagreement. *Id.*

The Smiths brought their claims against Union Carbide under Chapter 95 of the Texas Civil Practice and Remedies Code, and neither party disputes its applicability on appeal.[5] Section 95.003 of this chapter,

---

5. Chapter 95 applies only to a claim "(1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; and (2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 95.002 (Vernon Supp. 2008); *see also id.* § 95.001(1), (3) (Vernon Supp. 2008) (defining "Claim" as "a claim for damages caused by negligence, including a counterclaim, cross-claim, or third party claim" and "Property owner" as "a person or entity that owns real property primarily used for commercial or business purposes").

We note that our sister court has recently issued a plurality opinion questioning the broad application of Chapter 95 by Texas courts. *See Hernandez v. Brinker Int'l, Inc.*, 285 S.W.3d 152 (Tex.App.-Houston [14th Dist.] 2009, no pet.). However, the Smiths' case against Union Carbide was tried under Chapter 95, the unchallenged jury charge predicated Union Carbide's liability based upon the requisite findings under Chapter 95, and the parties on appeal agree that Chapter 95 was properly applied. The sole issue presented by the parties in this appeal in regard to Chapter 95 is whether there is sufficient evidence to support the jury's finding that Union Carbide controlled the details of Oliver's work and, thus, whether Union Carbide is liable to the Smiths for causing Oliver's mesothelioma.

entitled "Liability for Acts of Independent Contractors," provides,

A property owner is not liable for personal injury, death, or property damage to a contractor, subcontractor, or an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies an improvement to real property, including personal injury, death, or property damage arising from the failure to provide a safe workplace unless:

(1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and

(2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn.[6]

TEX. CIV. PRAC. & REM.CODE ANN. § 95.003 (Vernon Supp. 2008).

 The requisite control can be contractual or actual. *Vanderbeek v. San Jacinto Methodist Hosp.*, 246 S.W.3d 346, 352 (Tex.App.-Houston [14th Dist.] 2008, no pet.) (citing *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex.2002)). Because the Smiths do not cite any evidence showing that Union Carbide exercised or retained control contractually, we focus on actual control. *See id.* In order to have actual control, a property owner "must have the right to control the means, methods, or details of the independent contrac-tor's work *to the extent that the independent contractor is not entirely free to do the work his own way,*" and the "right to control the work must extend to the *'operative detail'* of the contractor's work." *Ellwood Texas Forge Corp. v. Jones*, 214 S.W.3d 693, 700 (Tex.App.-Houston [14th Dist.] 2007, pet. denied) (emphasis added) (citing *Chi Energy Inc. v. Urias*, 156 S.W.3d 873, 879 (Tex.App.-El Paso 2005, pet. denied)); *see also Arsement v. Spinnaker Exploration Co.*, 400 F.3d 238, 249 (5th Cir.2005) ("The requisite *control* factor is narrowly construed: the owner must control the "mode or method" of the contractor's work."). Actual control is not established by evidence showing that the property owner maintained general "control of the facilities." *Vanderbeek*, 246 S.W.3d at 352. Moreover, "merely exercising or retaining a *general right* to recommend a safe manner for the independent contractor's employees to perform their work is not enough to subject a premises owner to liability." *Dow Chem. Co.*, 89 S.W.3d at 607 (emphasis added) (citing RESTATEMENT (SECOND) OF TORTS § 414 cmt. c (1965)). Finally, the actual control "must relate to the injury the negligence causes." *Dow Chem. Co.*, 89 S.W.3d at 607.

As noted above, in evaluating actual control, Texas courts have generally focused on determining whether the property owner retained or exercised actual control over the manner in which the plaintiff-independent contractor or subcontractor performed his job.[7] *See id.; see also Phillips*

---

6. Union Carbide does not challenge the sufficiency of the evidence to support a finding that, as the property owner, it had actual knowledge of the danger or condition resulting in Oliver's mesothelioma and failed to adequately warn. *See* TEX. CIV. PRAC. REM.CODE ANN. § 95.003(2) (Vernon Supp. 2008). Accordingly, our focus is on the control issue in section 95.003(1). *See id.* § 95.003(1).

7. Here, the jury was asked in the charge to determine whether "Union Carbide exercise[d] or retain[ed] some control over the *manner in which [Oliver's] work* at Union Carbide's premises was performed,...." (Emphasis added). Because the Smiths did not challenge this jury question at trial or on appeal, we may not consider whether the question properly focused solely on whether

*v. Dow Chem. Co.*, 186 S.W.3d 121, 136 (Tex.App.-Houston [1st Dist.] 2005, no pet.). In accord with the majority of the Texas courts on this subject, here, the trial court submitted a question to the jury, which neither party challenged, asking the jury to determine whether "Union Carbide exercise[d] or retain[ed] some control over the manner in which [Oliver's] work at Union Carbide's premises was performed, other than the right to order the work to start or stop or to inspect progress or receive reports." An affirmative finding by the jury to this question was a predicate to Union Carbide's liability in this case.

In support of their argument that Union Carbide retained or exercised actual control over the manner in which Oliver's work was performed, the Smiths assert that there is evidence that Union Carbide employees "actively poisoned" Oliver's "breathing zone" while he was working on the Union Carbide premises, "thus ensuring that he could not perform his job in a safe manner." The Smiths argue that Union Carbide was "in direct control over the activity that harmed" Oliver because "Union Carbide employees working with asbestos pipe insulation in [Oliver's] vicinity created clouds of asbestos dust to which he was exposed." The Smiths argue, thus, that, by "actively creating a dangerous condition," Union Carbide had a duty to warn or protect Oliver.

The Smiths also assert that Union Carbide controlled Oliver's work by providing Oliver with asbestos gaskets and requiring

Union Carbide controlled the manner of *Oliver's work*, as opposed to the work being performed by the other contractors or employees on Union Carbide's premises. We note that the question as phrased many not be appropriate in all cases brought under Chapter 95. For example, here, the Smiths argued at trial that Oliver was exposed to asbestos at Union Carbide both directly in the course of work he performed and as a bystander to the work performed by other Union Carbide employees or contractors. Under these facts, the submission of a question that focuses solely on the property owner's control over the plaintiff-contractor's work omits any inquiry into whether the property owner exercised control over the other injury-causing work being performed by other non-plaintiff contractors or employees. Section 95.003, by its plain terms, does not appear to have such a limited focus, at least in all cases. Instead, section 95.003 refers to whether the property owner exercised or retained control over the manner in which "the work" is performed. TEX. CIV. PRAC. & REM.CODE ANN. § 95.003(1). In cases where the plaintiff-independent contractor alleges that the owner's direct employees or third-party contractors performed the injury-causing work, "the work" contemplated by Chapter 95 potentially includes reference to the injury-causing work performed by the property owner's employees or third parties. The relevant Texas Pattern Jury Charge supports the idea that a jury question, under facts similar to those presented here, might appropriately be more broadly focused on the injury-causing work rather than limited solely to the work performed by the plaintiff-independent contractor. Specifically, in a Chapter 95 case, a jury might be appropriately asked whether the property owner exercised or retained some control over "the manner" in which "the injury-causing" or "the defect-producing" work was performed, other than the right to order the work to start or stop or to inspect the progress or receive reports. *See* STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES-MALPRACTICE, PREMISES & PRODUCTS PJC 66.14 (2008). The comments to this pattern jury charge further state that "[t]erms describing the particular work alleged to have caused the injury or produced the defect should be substituted" for the above quoted phrases in the charge and that "[i]f it is agreed that the case involves only one condition," it is recommended "that the particular condition ... be substituted for the phrase *the condition.*" *See* STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES-MALPRACTICE, PREMISES & PRODUCTS PJC 66.14 cmts. (2008). Nevertheless, absent any challenge to this question at trial and on appeal, we focus on the sufficiency of the evidence to support the jury's finding that Union Carbide exercised or retained control over the manner in which Oliver's work was performed.

that he use these gaskets in the course of performing repair and new construction work on Union Carbide premises. The Smiths further assert that Union Carbide retained active control over asbestos-related safety information at the plant. Finally, the Smiths argue that Union Carbide controlled the manner in which Oliver and his employing-contractor performed their work because Union Carbide required, through specifications, that asbestos insulation be applied to the pipes that Oliver and his employing-contractor were constructing.

We first note that there is no evidence to support the Smiths' assertion that Union Carbide directly employed the insulators whose work created clouds of airborne asbestos dust in Oliver's vicinity. When asked whether these insulators were Union Carbide employees or contractors applying insulation in his vicinity, Oliver answered, "either one or both." When asked who tore off the old insulation while he worked at Union Carbide, Oliver stated, "The old insulation that was left would have been either by Carbide or their contractors ... I don't know for sure which one it was. It was one or the other." Thus, to the extent that any such evidence is relevant to the issue concerning the manner in which Oliver's work was performed, there is no evidence that Union Carbide directly employed insulators or controlled other employees who exposed Oliver to asbestos during the course of tearing out or applying asbestos insulation.

■ Second, although there is some evidence that Union Carbide supplied and specified the use of some asbestos-containing products on its premises, including gaskets and insulation, and although there is even evidence that Union Carbide supplied Oliver with asbestos-gaskets that he used in the course of some of his work at Union Carbide, there is no evidence that

Union Carbide exercised or retained any control over *the manner* in which Oliver's work was performed, which is what was required by the predicate jury question to impose liability upon Union Carbide and is expressly required by Chapter 95. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 95.003. In fact, Oliver himself testified that no one from Union Carbide ever told him how to do his job, and he agreed that he received all of his work instructions from his contractor employer. Oliver's exposure to asbestos at Union Carbide did not occur as a result of the mere provision of asbestos-containing gaskets. Rather, Oliver's exposure occurred, in part, as a result of the manner in which he ground the gaskets, and the fact that he did so without breathing protection or the employ of other safety measures. There is simply no evidence that Union Carbide controlled the manner in which Oliver performed this work. Moreover, although Jim Rapp, a Union Carbide employee, agreed that contractors in general did not have discretion to deviate from Union Carbide specifications, Rapp further stated that Union Carbide did not instruct its contractors on how to do their jobs, noting that they were "craftspeople, and they knew what they were doing." Rapp stated that Union Carbide was not in control of the details of any contract insulator's work. We conclude that the fact that Union Carbide provided certain specifications and materials for the projects to be completed on its premises does not constitute evidence that Union Carbide retained or exercised any control over the manner in which Oliver performed his work. *See Koch Refining Co. v. Chapa*, 11 S.W.3d 153, 156 (Tex.1999) ("Every premises owner must have some latitude to tell its independent contractors what to do, in general terms, and may do so without becoming subject to liability.").

Finally, the Smiths refer us to Rapp's testimony that Union Carbide supplied the contractor or employee insulators over whom he had supervision with information about the hazards of asbestos at safety meetings. The Smiths also cite excerpts from Union Carbide's manual for contractors, which provides that safety meetings would be conducted when warranted and that the contractor's supervisors would be required to attend such meetings. However, this evidence is not sufficient to impose liability upon Union Carbide. *See Bright,* 89 S.W.3d at 608 (holding that presence of property owner's safety employee and implementation of safe-work permit system insufficient to establish actual control); *Ellwood Texas Forge Corp.,* 214 S.W.3d at 702 (stating that "a premises owner, by requiring an independent contractor to follow its safety rules and regulations, does not owe the independent contractor's employee a duty to ensure that the employee does nothing unsafe," and that "the premises owner assumes only a narrow duty to ensure that its rules or requirements do not unreasonably increase the probability and severity of injury").

We hold that the Smiths presented legally insufficient evidence to support the jury's finding that Union Carbide exercised or retained some control over the manner in which Oliver's work at Union Carbide's premises was performed, other than the right to order the work to start or stop or to inspect progress or receive reports. Accordingly, we further hold that the trial court erred in denying Union Carbide's motion for judgment notwithstanding the verdict.

We sustain Union Carbide's first issue. Having sustained Union Carbide's first issue, we need not consider Union Carbide's second issue, in which it contends that the evidence is legally insufficient to support the jury's negligence finding against Union Carbide.

## Workers' Compensation

■ In its first issue, Hexion argues that the trial court erred in denying its motion for judgment notwithstanding the verdict because the evidence conclusively established Hexion's affirmative defense that the Smiths' claims are barred under the exclusive remedy provision of the Texas Workers' Compensation Act. *See* Tex. Lab.Code Ann. 408.001–408.222 (Vernon 2006 & Supp. 2008).

The Smiths sued Hexion both in its capacity as a direct employer of Oliver and in its capacity as the "successor-in-interest to the liabilities of Smith–Douglas Company, Inc.," Oliver's former employer. In their petition, the Smiths alleged that Oliver was employed by Hexion at its Texas City facility as a pipefitter from approximately 1957 to 1968. During this time, Oliver was continually exposed to asbestos and Hexion, as Oliver's employer, breached its duty to provide Oliver a safe work environment. The Smiths further alleged that Oliver's mesothelioma was caused by his employment with Hexion "and/or its predecessors-in-interest" Smith–Douglas. The Smiths' allegations against Hexion, in its capacity as his direct employer and in its capacity as successor-in-interest to Smith–Douglas, his former employer, were identical. Moreover, because the Smiths alleged that Oliver was exposed to asbestos during his entire time at Hexion's facility, they did not make any specific allegation as to Oliver's exposure only during his employment at the Hexion facility as a direct employee for Hexion or during Oliver's employment at the facility for Smith–Douglas. At trial, the Smiths also presented evidence that Oliver was exposed to asbestos during his entire employment at Hexion's facility both initially as an em-

ployee of Smith–Douglas and subsequently as a direct employee of Hexion.

The parties agree that, from 1957 until 1964, Oliver worked at Hexion's facility as an employee of Smith–Douglas and that, on December 30, 1964, Hexion, then known as the Borden Company, acquired Smith–Douglas through a merger, making Hexion the successor-in-interest to the assets and liabilities of Smith–Douglas. Oliver continued to work at Hexion's facility until 1968, which, after the merger, was operated as the Smith–Douglas division of Hexion. It is undisputed that after the merger, Hexion provided workers' compensation insurance to its employees at the facility, including Smith, and that this coverage remained in place for the duration of Oliver's employment with Hexion. The policies provided workers' compensation coverage for injuries "by disease caused or aggravated by exposure of which the last day of the last exposure, in the employment of the insured, to conditions causing the disease occurs during the policy period." Thus, it is undisputed on appeal that Oliver was covered by workers' compensation insurance while employed by Hexion after the merger and that this workers' compensation coverage applied to his mesothelioma.

Prior to trial, Hexion sought summary judgment on all of the Smiths' claims on the ground that the claims are barred by the exclusive remedy provision of the Texas Workers' Compensation Act (the "Act"). The trial court granted Hexion summary judgment in part "as to claims relating to the period on or after January 1, 1965," the date of the merger. However, the trial court denied Hexion's summary judgment motion as to the Smiths' claims against Hexion "related to the period before January 1, 1965," the period before the merger in which Oliver was employed by Smith–Douglas. Thus, the effect of the trial court's summary judgment ruling was that the Smiths were barred from pursuing their claims against Hexion, in its capacity as Oliver's direct employer, arising from Oliver's exposure to asbestos at Hexion post-merger. However, the Smiths were allowed to pursue their claims against Hexion in its capacity as successor-in-interest to Smith–Douglas arising from Oliver's exposure to asbestos at Hexion's facility pre-merger.[8]

During trial, Hexion sought a directed verdict on the Smiths' claims against it in its capacity as the successor-in-interest to Smith–Douglas, again citing the exclusive remedy provision of the Act. Hexion noted that the Act treats occupational diseases as a single injury arising when the employee knows or should know that he has an occupational disease and that the relevant policies provided coverage for Oliver's mesothelioma. Hexion asserted that the "exclusive remedy provision" of the Act should not be disregarded "merely because Hexion acquired Smith–Douglas and merged it into Hexion." The Smiths responded that the bar under the Act does not apply to their claims made against Hexion in its capacity as successor-in-interest to Smith–Douglas. The trial court denied Hexion's motion for directed verdict. Hexion subsequently filed its motion for judgment notwithstanding the verdict, which the trial court also denied.

The exclusive remedy provision of the Act provides,

 (a) Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers'

---

**8.** The trial court's granting of summary judgment in favor of Hexion "as to claims relating to the period on or after January 1, 1965" applied to all of the Smiths' claims against Hexion, in its individual capacity, including the Smiths' gross negligence claims.

compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee.

TEX. LAB.CODE ANN. § 408.001 (Vernon 2006); *see also id.* § 406.031(a) (Vernon 2006) (providing that insurance carrier is liable for employee's injury without regard to fault or negligence if at time of injury employee is subject to subtitle and injury arises out of and in course and scope of employment); *id.* § 406.031(b) (providing that if injury is occupational disease, employer "in whose employ the employee was last injuriously exposed to the hazards of the disease is considered to be the employer of the employee under this subtitle"); *id.* § 408.007 (providing that "date of injury" for occupational disease is date on which employee knew or should have known that disease may be related to employment).

Here, both the Smiths and Hexion agree that Oliver's mesothelioma qualifies as a work-related injury. Also, the Smiths have not challenged the trial court's summary judgment ruling barring them from pursing their claims against Hexion related to Oliver's asbestos-exposure at Hexion's facility following the merger on the basis of the exclusive remedy provision of the Act. Rather, the sole dispute presented in this appeal in regard to the workers' compensation issue is whether the exclusive remedy provision of the Act applies to the Smiths' claims made against Hexion in its capacity as successor-in-interest to Smith–Douglas that are related to Oliver's exposure at Smith–Douglas prior to the merger.

Although this specific issue is one of first impression, our sister court has considered a closely related matter. *See Davis v. Sinclair Refining Co.,* 704 S.W.2d 413, 414 (Tex.App.-Houston [14th Dist.] 1985, writ ref'd n.r.e.). There, Davis, the plaintiff, sought to recover damages beyond what he had received under the existing workers' compensation laws for injuries that he had sustained while working at an Arco refinery. *Id.* In 1965, Sinclair Refining owned the refinery and, during its ownership, it had negligently installed a connection to a pump. *Id.* In 1968 and 1969, Sinclair Refining merged with Sinclair Oil, which then merged with Arco. *Id.* After these mergers, Davis, who had been hired by Arco to work at the refinery, was instructed to make repairs to a leak in the pump. *Id.* During his repairs, the faulty connection on the pump gave way and Davis was burned. *Id.* Davis received workers' compensation from Arco's insurance carrier, but he also filed a separate lawsuit against both Sinclair and Arco for Sinclair's negligence in installing the connection. *Id.* Sinclair and Arco sought summary judgment on the ground that Davis had elected his remedy and accepted his benefits under the Act. *Id.*

In an effort to avoid the exclusive remedy provision of the Act, Davis, citing another provision which allowed an injured employee to sue a third party tortfeasor whose negligence caused his injuries,[9] argued that he should be allowed to sue Arco because Arco, through the mergers, had "assumed, by contract and operation of law, the obligations and liabilities of a third

**9.** Although Davis cited a section from the predecessor version of the Act, the current Act continues to authorize an employee to seek damages from a third-party tortfeasor. *See* TEX. LAB.CODE ANN. § 417.001(a) (Vernon 2006) ("An employee or legal beneficiary may seek damages from a third party who is or becomes liable to pay damages for an injury or death that is compensable under this subtitle and may also pursue a claim for workers' compensation benefits under this subtitle.").

party tortfeasor, Sinclair Refining." *Id.* In order to answer the issue, the court examined the history and purpose of the Act. *Id.* at 415. The court first noted that the Act was "intended to and [did] provide an exclusive system governing compensation to employees for injuries arising from their employment." *Id.* Also, "[i]n taking away from the subscribing employer certain defenses and relieving the employee of the burden of proving negligence, it was provided that these benefits are made available in derogation of the employee's rights at common law." *Id.* The court further noted that the system is "voluntary and elective upon the decision of both the employer and employee" and "when the two [had] elected to participate under the Act, they [had] voluntarily agreed that the rights and remedies otherwise existing under the common law shall not be operative." *Id.* The court held that because Davis had elected his remedy against his employer, Arco, he should not then be allowed to attempt to distinguish his employee status and sue Arco again by "invoking the third party tortfeasor exception to the Act." *Id.* at 416. The court concluded, "The Act is very clear; once the employee elects to accept benefits from the employer under the Act, he has no further cause of action against the employer." *Id.*

In holding that Davis's claims were barred by the exclusive remedy provision of the Act, the court rejected Davis's argument that he had retained his claims against Arco "because Arco assumed the liabilities of Sinclair Refining under the merger laws of the Texas Business Corporation Act." *Id.* at 415 (citing Tex. Bus. Corp. Act Ann. art. 5.06 (Vernon Supp. 2008) (providing that "separate existence of every domestic corporation that is a party to the merger, except any surviving or new domestic corporation, shall cease" and that "all liabilities and obligations" of

merged corporation "shall be allocated" to surviving or new corporation)). The court emphasized that "the corporate merger statutes were not intended to be used to circumvent the clear public policy" of the Act. *Id.*

Here, similar to *Davis,* the Smiths do not seek to impose liability upon Hexion for Hexion's individual negligence post-merger in its capacity as Oliver's direct employer. Those claims were resolved by the unchallenged summary judgment ruling which was based upon the exclusive remedy provision of the Act. Rather, the Smiths seek to impose liability upon Hexion for the negligence of Smith–Douglas, Hexion's predecessor and Oliver's former employer, which occurred prior to the merger. We recognize the obvious factual distinctions from *Davis,* i.e., that, unlike Oliver, Davis was never an employee of the predecessor corporation (Sinclair) that committed the negligence for which he sought to hold his employer (Arco) liable. This factual distinction makes stronger the argument for the application of the exclusive remedy provision of the Act in this case. Here, during Oliver's tenure as a worker at the Hexion facility, he worked first as an employee of Smith–Douglas and then, post-merger, as a direct employee of Hexion at the Smith–Douglas division. At the time of the merger, Hexion purchased workers' compensation insurance. The insurance, by its plain terms, applies coverage for Oliver's occupational disease, and even the Smiths do not challenge the applicability of the insurance policy, at least as to Oliver's mesothelioma arising from his asbestos-exposure that occurred post-merger. Accordingly, we hold that Oliver's claims against Hexion, his employer, arising from his abestos-exposure while working at the Hexion facility as an employee of Smith–Douglas, are barred by the exclusive remedy provision of the Act.

We decline the Smiths' request to apply, on the facts presented, the "dual-persona" doctrine as a means to avoid the exclusive remedy provision of the Act.[10] *See Davis,* 704 S.W.2d at 414 (explaining that "dual persona" doctrine is "a concept based upon the surviving corporation's responsibilities under the statutory merger scheme as separate from its role as corporate employer under the workers' compensation laws"). The "dual-persona" doctrine has never been adopted by a Texas court as a means for imposing liability on a subscribing employer and avoiding the exclusive remedy provision of the Act. In fact, in *Davis,* although the court devoted its most substantial discussion to the scope of the dual-capacity doctrine, and provided only passing reference to the dual-persona doctrine, the underlying facts addressed by the court in that case actually more closely implicated the dual-persona doctrine, which the court impliedly rejected. *See Davis,* 704 S.W.2d at 414–15.

Even if we were inclined to apply a limited dual-persona doctrine, we note that courts in other jurisdictions have applied this doctrine on facts more akin to those presented in *Davis* than those presented in the instant case. *See Percy v. Falcon Fabricators, Inc.,* 584 So.2d 17, 18 n. 3 (Fla. 3d DCA 1991) (describing "dual persona" as "focus[ing] not on whether the employer was acting in his capacity as provider of services on the job site or manufacturer of equipment used on the job site, but on the corporate merger by which the successor corporation, which coincidentally is also the employer, *assumed the debts and liabilities of the entity that manufactured the product*") (emphasis added); *Kimzey v. Interpace Corp., Inc.,* 10 Kan.App.2d 165, 694 P.2d 907, 912 (1985) (applying dual-persona doctrine and noting that "[p]laintiff's action is essentially an attempt to recover from a third-party manufacturer of a defective machine through a suit against its ·successor corporation."); *Billy v. Consol. Mach. Tool Corp.,* 51 N.Y.2d 152, 162, 432 N.Y.S.2d 879, 412 N.E.2d 934 (N.Y.1980) (applying dual-persona doctrine and noting that "[i]nasmuch as plaintiff's action represents essentially an attempt to recover from third-party manufacturers through a suit against their corporate successor, plaintiff should be permitted to maintain the action, notwithstanding that the successor corporation is also an employer which would otherwise be immune from suit").

Moreover, we cannot agree with the Smiths that section 417.004 of the Act, entitled "Employer Liability to Third Party," somehow evidences a legislative intent to adopt the dual-persona doctrine. Section 417.004 provides,

> In an action for damages brought by an injured employee, a legal beneficiary, or an insurance carrier against a third party liable to pay damages for the injury or death under this chapter that results in a judgment against the third party or

---

10. We note that although Hexion argues in its briefing against the application of the "dual-capacity" doctrine, the Smiths do not suggest that Hexion should be held liable under this doctrine. In fact, the Smiths recognize that Texas courts have rejected the dual-capacity doctrine. *See Payne v. Galen Hosp. Corp.,* 28 S.W.3d 15, 20 n. 4 (Tex.2000) (explaining that, under "dual capacity" doctrine, "an employer normally shielded from liability by the workers' compensation exclusive-remedy principle may become liable in tort to an employee if it occupies, in addition to its capacity as an employer, a second capacity that confers on it obligations independent of those imposed on it as an employer"; noting that Texas courts of appeals have "uniformly rejected" dual-capacity doctrine); *Ramirez v. Pecan Deluxe Candy Co.,* 839 S.W.2d 101, 108 (Tex.App.-Dallas 1992, writ denied) (stating that "Texas law currently mandates against the judicial adoption of this [dual-capacity] doctrine").

a settlement by the third party, the employer is not liable to the third party for reimbursement or damages based on the judgment or settlement unless the employer executed, before the injury or death occurred, a written agreement with the third party to assume the liability.

TEX. LAB.CODE ANN. § 417.004 (Vernon 2006). By its plain terms, section 417.004 protects a workers' compensation subscriber from liability to a third-party who is liable to pay damages for the injury or death "under this chapter that results in a judgment against the third party or a settlement by the third party" in the absence of a "written agreement with a third party to assume liability." *See id.*

Finally, contrary to the Smiths' argument otherwise, the Texas Supreme Court did not effectively adopt the dual-persona doctrine in *Enserch Corp. v. Parker,* 794 S.W.2d 2 (Tex.1990) and *Dorchester Gas Corp. v. American Petrofina, Inc.,* 710 S.W.2d 541 (Tex.1986). In *Enserch Corp.,* the supreme court considered the "enforceability of an indemnity agreement" entered into between a pipeline owner and operator, Enserch, and a contractor-employer, Christie, which provided that Christie assumed all liability for any claims arising out of the performance of the contract and that Christie would indemnify Enserch in respect of any such matters. 794 S.W.2d at 4, 6–7. Two Christie employees were subsequently killed in performing the work specified in the contract, and the workers brought suit against Enserch, who then sought indemnity from Christie based upon their indemnity agreement. *Id.* at 4. The court considered a predecessor version of section 417.004, which prohibited "indemnity in the workers' compensation context unless one party *expressly agrees* to indemnify the other in writing." *Id.* at 7. The court, in examining the indemnity language, concluded that

the contractor-employer had "expressly assumed liability for injuries to its own employees" in the indemnity agreement with the pipeline owner and, thus, the pipeline owner's indemnity claim was not barred by the Act. *Id.* at 8. *Enserch Corp.* did not involve an employee's ability to sue its own subscribing employer under the dual-persona doctrine.

In *Dorchester Gas Corp.,* Fina sold a refinery to Dorchester, a Dorchester employee was subsequently injured and collected workers' compensation benefits, and the worker and carrier then sued Fina. 710 S.W.2d at 541–42. Fina settled the suit and then filed suit against Dorchester seeking indemnity for the settlement payment based upon the indemnity clause in the purchase and sale agreement. *Id.* at 542. The court held that the indemnity clause did not reflect that the parties had clearly and unequivocally intended for Dorchester to indemnify Fina against all injury or damages, whether or not they were based upon Fina's negligence or due to Fina's supplying of a defective product. *Id.* at 543–44. The court did not consider the exclusivity provision of the Act or the dual-persona doctrine in its opinion.

In sum, having concluded that there is no authority in Texas for applying the dual-persona doctrine under these circumstances, and having rejected the Smiths' arguments that this doctrine has been effectively adopted by the Texas Supreme Court, we decline to apply it here as a means to impose liability upon Hexion in contravention of the exclusive remedy provision of the Act. Accordingly, we hold that the trial court erred in denying Hexion's motion for judgment notwithstanding the verdict.

We sustain Hexion's first issue. Having held that the Smiths' claims against Hexion are barred by the exclusive remedy

provision of the Act, we need not consider Hexion's remaining issues.

## Conclusion

We reverse the trial court's judgment and render a take nothing judgment in favor of Union Carbide and Hexion.