**AFFIRMED and Opinion Filed November 1, 2018**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00719-CV

**JOSE HERNANDEZ, Appellant**
**V.**
**SUN CRANE AND HOIST, INC.: JLB PARTNERS, L.P.; JLB BUILDERS, L.L.C., AUGER DRILLING, INC., AND D'AMBRA CONSRUCTION CORPORATION,**
**Appellees**

**On Appeal from the County Court at Law No. 4**
**Dallas County, Texas**
**Trial Court Cause No. CC-15-00715-D**

## MEMORANDUM OPINION
Before Justices Bridges, Evans, and Whitehill
Opinion by Justice Bridges

Jose Hernandez appeals the trial court's order granting the traditional and no-evidence summary judgment motion of Sun Crane and Hoist, Inc., JLB Partners L.P., and JLB Builders, L.L.C., and ordering that Hernandez take nothing on his claims. In two issues, Hernandez argues the trial court erred in granting JLB's traditional and no-evidence motion for summary judgment. We affirm the trial court's judgment.

In October 2013, JLB entered into a Subcontract Agreement with Capform, Inc. regarding a construction project in Dallas. On December 5, 2013, Alejandro Molina was Capform's foreman and Hernandez was a member of the work crew under Molina's supervision. Hernandez was injured when he fell from a "rebar cage" while attempting to place on the cage a concrete form

suspended from a crane. According to Molina's affidavit, the crane operator "made the form strike the rebar cage and cause it to start falling over." Hernandez was injured in the fall, and he later sued JLB and asserted negligence claims.

In the Subcontract, JLB was listed as "Contractor," and Capform was listed as "Subcontractor." Among other things, the Subcontract provided the following:

> [Capform], at its expense, shall furnish all of the supervision, labor, material, tools, equipment, insurance, services, shop drawings, samples, protection, hoisting, scaffolding, supplies, warrantees and all permits, licenses and fees (as applicable) necessary to perform, construct, and complete, in the manner set out in the Contract Documents (defined below), the work described in EXHIBIT A of this Agreement (the "Work").

The Subcontract further provided that Capform was responsible for furnishing all equipment required to perform the Work including, but not limited to, ramps, ladders, scaffolds, hoisting and other equipment. An entire subsection of the Subcontract related to "Safety" and provided, among other things, the following:

> (1)   Compliance. [Capform] shall fully comply with all laws, orders, citations, rules, regulations, standards and statutes with respect to occupational health and safety, accident prevention, and safety equipment and practices, including without limitation, OSHA standards and any accident prevention and safety program sponsored by Owner or [JLB]. Without limiting the foregoing, simultaneous with the execution hereof, Subcontractor shall complete, execute and deliver to [JLB] an Accident Prevention Plan in the form set forth on EXHIBIT J attached hereto, and shall at all times comply with the requirements of EXHIBIT J and EXHIBIT K attached hereto.
>
> (2)   Precautions and Programs.
>
> (a)   [Capform] shall be responsible for initiating, maintaining and supervising all safety precautions and programs in its Work and shall conduct inspections to determine that safe working conditions and equipment exist.
>
> (b)   [Capform] accepts sole responsibility for providing a safe place to work for its employees and for the employees of its sub-subcontractors and suppliers, and for the adequacy and required use of all safety equipment.
>
> (c)   Prior to the commencement of the Work, [Capform] shall submit its site specific safety program to [JLB]. [Capform's] safety program must specifically address, among other safety issues, scaffolding, fall hazards, trenching and shoring, as may be applicable.

–2–

Regarding "Staffing," the subcontract provided that Capcom was "solely responsible for the acts and omissions of its employees, agents and suppliers and for the acts and omissions of its sub-subcontractors and their employees, agents and suppliers." The Subcontract further required Capform to keep a representative on the job site at all times when the work was in progress and provided that JLB "shall not issue or give any instructions, order or directions directly to employees or workers of [Capform] other than to the persons designated as the authorized representatives of [Capform]." In another part of the Subcontract providing a "Description of Work," Capform was required to provide a full-time foreman onsite anytime workers were present. If Capform failed to provide a foreman, Capform's crew would be "ordered to leave the job." If crews were ordered to leave, it was Capform's responsibility to make up lost time at its own expense, and Capform was still responsible for "meeting the contract durations" and paying a $100 fine each time a foreman was not onsite.

JLB filed a traditional and no-evidence motion for summary judgment in which it argued JLB did not owe a duty to Hernandez because he was an employee of an independent contractor and JLB did not have control over Hernandez. In particular, JLB argued it did not have a contractual right to control the means, methods, or details of Hernandez' work and did not exercise actual control over Hernandez' work. In support of its motion, JLB provided excerpts of the deposition of Juan Gutierrez, Capform's superintendent, who testified "no one from JLB has to tell us how to do the job," and Gutierrez is "the one who's in charge of what work that Capform employees are doing on a daily basis." Gutierrez testified no one from JLB told him "how to install the braces" on the rebar tower that fell. JLB also attached to its motion excerpts from Hernandez' deposition in which Hernandez testified JLB did not give him any instructions on how to set the form on the platform on the day of the accident. Hernandez testified Gutierrez was "supervisor," and Molina was the foreman of the crew, they both worked for Capform. Molina

–3–

told Hernandez he would be setting the platform on the day of the accident. Hernandez testified JLB did not tell him to set the platform or to get up on the tower that fell. Hernandez testified he did not see anyone from JLB "on this job on the day of the accident before it occurred." Hernandez replied, "I don't know" when asked whether anyone from JLB knew bracing for the rebar cage had been attached with nails instead of rebar, whether he had any reason to believe JLB caused the accident, or whether Capform installed the braces on the cage.

Hernandez filed a response to JLB's motion for summary judgment in which he argued JLB was the "controlling employer" for work on the site, JLB required Capform to submit a separate safety program for JLB's approval, JLB had contractual authority to control the details of Capform's work, including accident prevention and safety, and exercised thoroughgoing control of the details of the work, including safety programs. Thus, Hernandez argued, there was ample evidence JLB breached its duty to assure safe working conditions for Hernandez, and its failure led to Hernandez' injuries. The trial court granted JLB's traditional and no-evidence motion for summary judgment, and this appeal followed.

In two issues, Hernandez argues the trial court erred in granting traditional and no-evidence summary judgment. Specifically, Hernandez argues JLB owed a duty to Hernandez to keep him safe and breached that duty by permitting and instructing Capform to work under dangerous conditions. Hernandez argues the agreement between JLB and Capform is "replete with instances in which JLB Builders specifically directs and controls Capform's work." Further, Hernandez argues JLB actually controlled Capform's work by supervising its work on-site, conducting daily inspections, and requiring Capform to submit safety plans.

We review the trial court's decision to grant summary judgment de novo. *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). A party seeking a no-evidence summary judgment must assert that no evidence exists as to one or more of the essential

–4–

elements of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i); *Henning v. OneWest Bank FSB*, 405 S.W.3d 950, 957 (Tex. App.—Dallas 2013, no pet.). "The motion must state the elements as to which there is no evidence." TEX. R. CIV. P. 166a(i); *Henning*, 405 S.W.3d at 957. Once the movant specifies the elements on which there is no evidence, the burden shifts to the nonmovant to raise a fact issue on the challenged elements. *See* TEX. R. CIV. P. 166a(i); *Henning*, 405 S.W.3d at 957; *see also S.W. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). We review a no-evidence motion for summary judgment under the same legal sufficiency standard used to review a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003); *Flood v. Katz*, 294 S.W.3d 756, 762 (Tex. App.—Dallas 2009, pet. denied). Our inquiry focuses on whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the challenged elements. *See King Ranch*, 118 S.W.3d at 751; *Flood*, 294 S.W.3d at 762. Evidence is no more than a scintilla if it is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *King Ranch*, 118 S.W.3d at 751. If a no-evidence motion for summary judgment and a traditional motion for summary judgment are filed which respectively asserts the plaintiff has no evidence of an element of its claim and alternatively asserts that the movant has conclusively negated that same element of the claim, we address the no-evidence motion for summary judgment first. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

To prevail on a traditional summary judgment motion, a movant has the burden of proving that he is entitled to judgment as a matter of law and that there is no genuine issue of material fact. TEX. R. CIV. P. 166a(c); *Cunningham v. Tarski*, 365 S.W.3d 179, 185-86 (Tex. App.—Dallas 2012, pet. denied). When a defendant moves for summary judgment, he must either (1) disprove at least one essential element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of an affirmative defense, thereby defeating the plaintiff's cause of action.

*Cunningham*, 365 S.W.3d at 186. In determining whether there is a genuine fact issue precluding summary judgment, evidence favorable to the nonmovant is taken as true and the reviewing court makes all reasonable inferences and resolves all doubts in the nonmovant's favor. *Id.*; *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548–49 (Tex. 1985). A matter is conclusively established if reasonable minds cannot differ as to the conclusion to be drawn from the evidence. *Cunningham*, 365 S.W.3d at 186; *see also City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). Once a movant conclusively establishes an affirmative defense, the burden of production shifts to the nonmovant to present summary judgment evidence that raises a fact issue on at least one element of the movant's affirmative defense or an exception or defense to that affirmative defense. *Cunningham*, 365 S.W.3d at 186. Where, as here, the trial court's order granting summary judgment does not specify the grounds relied upon, we must affirm the summary judgment if any of the summary judgment grounds are meritorious. *Id.*

Our review of the evidence concerning negligence begins with duty. *Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 783 (Tex. 2001). Ordinarily, a general contractor does not owe a duty to ensure that an independent contractor performs its work in a safe manner. *Id.* (citing *Elliott–Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex.1999)). A duty does arise, however, if the general contractor retains some control over the manner in which the independent contractor performs its work. *Id.* The general contractor's duty of care is commensurate with the control it retains over the independent contractor's work. *Id.* A general contractor can retain the right to control an aspect of an independent contractor's work or project so as to give rise to a duty of care to that independent contractor's employees in two ways: by contract or by actual exercise of control. *Id.*

General supervisory control, however, that does not relate to the activity causing the injury is not sufficient to create a duty. *Gonzalez v. VATR Constr. LLC*, 418 S.W.3d 777, 785 (Tex.

–6–

App.—Dallas 2013, no pet.). As a result, merely exercising or retaining a general right to recommend a safe manner for the independent contractor's employees to perform their work is not enough to impose a duty. *Id.* In addition, there must be a nexus between a general contractor's retained supervisory control and the condition or activity that caused the injury. *Hoechst-Celanese Corp. v. Mendez*, 967 S.W.2d 354, 357-58 (Tex. 1998). The right to control must be more than a general right to order work to stop and start, or to inspect progress. *Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 226 (Tex. 1999). The supervisory control must relate to the activity that actually caused the injury, and grant the owner at least the power to direct the order in which work is to be done or the power to forbid it being done in an unsafe manner. *Id.* If the contract does not explicitly assign control over the manner of work to the general contractor, then the plaintiff must present evidence of the actual exercise of control by the general contractor. *See Gonzalez*, 418 S.W.3d at 785.

Here, in its Health & Safety Manual, JLB referred to itself as a "Controlling Employer for their Multi-employer Worksites. The manual elaborated that "Controlling Employer is define[d] by OSHA as:"

> An employer who has general supervisory authority over the worksite, including the power to correct safety and health violations itself or require others to correct them. Control can be established by contract or, in the absence of explicit contractual provisions, by the exercise of control in practice.

> As the controlling employer, we exercise reasonable care to prevent and detect violations on their [sic] construction sites. JLB Builders, LLC understands that the extent of the measures that a controlling employer must implement to satisfy this duty of reasonable care is less than what is required of an employer with respect to protecting its own employees. This means that the controlling employer is not normally required to inspect for hazards as frequently or to have the same level of knowledge of the applicable standards or of trade expertise as the employer it has hired.

Thus, JLB identified itself as a "controlling employer" as defined by OSHA but also explained that its duty of reasonable care was "less than what is required of an employer with

respect to protecting its own employees." JLB's implementation of a safety manual, its undertaking of a duty of reasonable care to prevent and discover safety violations, and its enforcement of subcontractor's compliance with safety and health requirements did not constitute contractual control that related specifically to the injury the alleged negligence causes. *Coastal Marine*, 988 S.W.2d at 226; *Gonzalez*, 418 S.W.3d at 785. Moreover, the contract between JLB and Capform repeatedly made clear that Capform was responsible for providing all equipment for performing the work; Capform was "solely responsible for the acts and omissions of its employees, agents and suppliers and for the acts and omissions of its sub-subcontractors and their employees, agents and suppliers"; and Capform accepted sole responsibility for providing a safe place to work for its employees and for the employees of its sub-subcontractors and suppliers, and for the adequacy and required use of all safety equipment. We conclude Hernandez failed to offer any evidence that JLB exercised contractual control over Capform or Hernandez.

On the issue of whether JLB exercised actual control, we have already determined calling itself "controlling employer" was not enough. In order to have actual control, a property owner or occupier "must have the right to control the means, methods, or details of the independent contractor's work to the extent that the independent contractor is not entirely free to do the work his own way," and the "right to control the work must extend to the 'operative detail' of the contractor's work." *Union Carbide Corp. v. Smith*, 313 S.W.3d 370, 375 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (quoting *Ellwood Tex. Forge Corp. v. Jones*, 214 S.W.3d 693, 700 (Tex. App.—Houston [14th Dist.] 2007, pet. denied)). "A possibility of control is not evidence of a 'right to control' actually retained or exercised." *Hernandez v. Hammond Homes, Ltd.*, 345 S.W.3d 150, (Tex. App.—Dallas 2011, pet. denied) (quoting *Coastal Marine*, 988 S.W.2d at 226) (evidence plaintiff would have followed safety measures and avoided injury if defendant had required them was no evidence of actual control). A general contractor has actually exercised

–8–

control of a premises when the general contractor knew of a dangerous condition before an injury occurred and approved acts that were dangerous and unsafe. *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 609 (Tex. 2002) (citing *Lee Lewis Constr.*, 70 S.W.3d at 784).

The evidence showed Hernandez and Gutierrez, both Capform employees, testified JLB did not tell them how to perform any of the work that led to the rebar cage accident. Instead, Capform supervisor Gutierrez testified "no one from JLB has to tell us how to do the job." Hernandez testified JLB did not give him any instructions on how to set the form on the platform on the day of the accident. Hernandez testified Gutierrez was "supervisor," and Molina was the foreman of the crew, they both worked for Capform, and Molina told him he would be setting the platform on the day of the accident. Hernandez testified JLB did not tell him to set the platform or to get up on the tower that fell. Hernandez testified he did not see anyone from JLB "on this job on the day of the accident before it occurred." Hernandez replied, "I don't know" when asked whether anyone from JLB knew bracing for the rebar cage had been attached with nails instead of rebar, whether he had any reason to believe JLB caused the accident, or whether Capform installed the braces on the cage. Thus, there was no evidence that JLB exercised actual control that related to the injury the alleged negligence caused or that JLB specifically approved the dangerous act. *See Dow Chem.*, 89 S.W.3d at 607-09. Under these circumstances, we conclude the trial court did not err in granting JLB's no-evidence motion for summary judgment. Having reached this conclusion, we need not decide whether summary judgment was also appropriate under a traditional standard. We overrule Hernandez' issues.

We affirm the trial court's judgment.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

170719F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JOSE HERNANDEZ, Appellant

No. 05-17-00719-CV     V.

SUN CRANE AND HOIST, INC.: JLB
PARTNERS, L.P.; JLB BUILDERS,
L.L.C., AUGER DRILLING, INC., AND
D'AMBRA CONSRUCTION
CORPORATION, Appellees

On Appeal from the County Court at Law
No. 4, Dallas County, Texas
Trial Court Cause No. CC-15-00715-D.
Opinion delivered by Justice Bridges.
Justices Evans and Whitehill participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees SUN CRANE AND HOIST, INC.: JLB PARTNERS, L.P.; JLB BUILDERS, L.L.C., AUGER DRILLING, INC., AND D'AMBRA CONSRUCTION CORPORATION recover their costs of this appeal from appellant JOSE HERNANDEZ.

Judgment entered November 1, 2018.