Vernon SHAW, Individually and as Representative of the Estate of Debra Kay Shaw, Patricia Alderman and Joyce Shaw, Appellants,

v.

TRINITY HIGHWAY PRODUCTS, LLC, Appellee.

No. 05–09–00561–CV.

Court of Appeals of Texas, Dallas.

Dec. 20, 2010.

Blake Bailey, Marisa M. Schouten, Martin Walker P.C., Tyler, TX, for Appellants.

Russell Clay Brown, Law Offices of Russell C. Brown, P.C., Henderson, TX, Heather Bailey New, Haynes & Boone, L.L.P., Dallas, TX, for Appellee.

Before Justices MORRIS, MARTIN RICHTER, and LANG–MIERS.

## OPINION

Opinion By Justice MORRIS.

In this products liability case, Vernon Shaw, Individually and as Representative of the Estate of Debra Kay Shaw, Patricia Alderman, and Joyce Shaw challenge the trial court's take-nothing summary judgment on their design defect, marketing defect, and negligence claims against Trinity Highway Products, LLC. In two issues, appellants, who we refer to collectively as the Shaws, generally assert that the trial court erred in granting Trinity's tradition-

al and no-evidence motions for summary judgment because Trinity did not conclusively establish the grounds set forth in its traditional motion and the summary judgment evidence raised fact issues that precluded the granting of either motion. In an additional issue, the Shaws contend the trial court abused its discretion in striking a document they submitted as summary judgment evidence. For the reasons that follow, we affirm the trial court's judgment.

## I.

This case arises from a one-vehicle collision with a highway guardrail and the end cap on it known as the ET–2000. The end cap was designed to absorb and dissipate the energy of a vehicle impacting the end of the guardrail by extruding the guardrail's w-beam through a slot in the end cap. According to the Shaws' accident reconstruction expert, Mike C. Andrews, Debra Shaw was driving her Nissan pickup truck at around 65 mph on Interstate Highway 20 near Van, Texas, when it drifted off the road onto the shoulder and struck the lower left corner of the end cap with the front passenger bumper and frame rail at a shallow angle of no more than a few degrees. The impact pushed the end cap back along the guardrail extruding about thirty inches of the w-beam. At this point, the end cap stopped and rotated counter-clockwise about 180 degrees before it and the guardrail penetrated the truck's cabin. The end cap became lodged in the cabin, while the guardrail passed between the truck's two seats before striking and penetrating the rear wall of the truck's cabin. Shaw died from injuries she received in the crash. Patricia Alderman, Shaw's sister and passenger, sustained injuries but survived.

The Shaws filed this lawsuit against Trinity, the manufacturer and seller of the end cap, along with several other defendants. Among other things, the Shaws claimed Trinity was liable under strict liability and negligence theories because the end cap was defectively designed. The Shaws also alleged a marketing defect claim. Trinity filed a no-evidence summary judgment motion challenging each element of the various causes of action asserted against it. It also filed a separate traditional motion for summary judgment arguing, among other grounds, that the Shaws' claims were barred by federal preemption and section 82.008 of the Texas Civil Practice and Remedies Code. The trial court granted both of Trinity's motions and ordered the Shaws take nothing by their claims against Trinity. The Shaws filed this appeal.[1]

## II.

Before analyzing the merits of the Shaws' issues, we first address Trinity's assertion that the Shaws have not preserved their appellate arguments with respect to Trinity's no-evidence summary judgment motion. Trinity contends the Shaws' summary judgment response in the trial court did not specifically discuss or analyze their summary judgment evidence with respect to each element Trinity challenged. It also asserts that most of the summary judgment evidence upon which the Shaws rely to create fact issues was not attached to their response but was contained in their previously filed response to a co-defendant's summary judgment motion. Trinity argues the Shaws' default in the trial court precludes them from

---

1. The trial court granted summary judgment on additional causes of action that the Shaws asserted against Trinity. The Shaws' appeal, however, is limited to those causes of action stated above.

challenging its no-evidence motion on appeal and we must therefore affirm the trial court's summary judgment on this basis.

Once a movant files a proper no-evidence summary judgment motion, the respondent must bring forth evidence that raises a fact issue on the challenged elements. Tex.R. Civ. P. 166a(i); *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 599 (Tex. 2004). Here, the Shaws filed a timely response to Trinity's no-evidence summary judgment motion discussing the facts giving rise to their causes of action and arguing that they presented sufficient evidence to raise a genuine issue of material fact with respect to each element challenged by Trinity. The response specifically referred to and incorporated by reference exhibits "A" through "H," which were identified as photographs, depositions, and affidavits. Although summary judgment exhibits "A" through "G" were not physically attached to the Shaws' response, our record contains a file-stamped copy of the cover letter accompanying the response, a copy of which was sent to Trinity's counsel, that states the following: "We have attached Exhibit "H" to this response. Exhibits "A" through "G" are the same exhibits that were attached to Plaintiff's Response to Madden's Motion for Summary Judgment filed on April 7, 2009 and should be incorporated for all purposes." There is no indication in the record that Trinity objected to this procedure.

Evidence that may be considered in determining a summary judgment motion includes "deposition transcripts, interrogatory answers, and other discovery responses referenced or set forth in the motion or response" as well as "affidavits ... on file at the time of the hearing." Tex.R. Civ. P. 166a(c). Although exhibits "A" through "G" were not physically attached to their response, the Shaws' cover letter and response referenced and incorporated these exhibits as summary judgment evidence and directed the trial court to where it could locate them in the court's file. Based on the record before us, we conclude the Shaws sufficiently preserved their arguments with respect to Trinity's no-evidence summary judgment motion. Accordingly, we reject Trinity's waiver argument as a basis for affirming the court's judgment.

## III.

We begin our discussion of the merits of this appeal by reviewing the propriety of the trial court's judgment with respect to Trinity's traditional summary judgment motion. The standards for reviewing a traditional motion for summary judgment are well-established: (1) the movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; (2) evidence favorable to the nonmovant will be taken as true for purposes of determining the existence of a genuine issue of material fact; and (3) we indulge every reasonable inference in favor of the nonmovant and resolve any doubts in their favor. *See Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 543–49 (Tex.1985). Where, as here, the trial court does not specify the grounds for its summary judgment, the party challenging the order must show that each of the grounds is insufficient to support the judgment. *See McMahon Contracting, L.P. v. City of Carrollton,* 277 S.W.3d 458, 468 (Tex.App.-Dallas 2009, pet. denied). We must affirm the summary judgment if any of the grounds presented to the trial court are meritorious. *Id.*

Among other grounds, Trinity argued that all of the Shaws' product liability claims were barred by subsections 82.008(a) and (c) of the Texas Civil Practice and Remedies Code. Tex. Civ. Prac. &

REM.CODE ANN. § 82.008(a), (c) (West 2005). Each of these subsections create a "rebuttable presumption" for defendant manufacturers and sellers. Under subsection (a), no liability exists for a product's formulation, labeling, or design when the product's formula, labeling, or design complied with mandatory safety standards or regulations adopted and promulgated by the federal government or a federal agency that were applicable to the product at the time of manufacture and that governed the product risk that allegedly caused harm. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 82.008(a). Under subsection (c), no liability exists if the product was subject to and complied with the federal government's or a federal agency's requirements and procedures for pre-marketing licensing or approval and was approved for sale by the government or agency after full consideration of the product's risks and benefits. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 82.008(c).

The Shaws argue that Trinity failed to meet its burden of proof with respect to section 82.008 because it "did not provide the Court with written federal standards such as those promulgated by the Consumer Product Safety Commission" and no independent agency was involved in the development of the safety requirements, testing, or certification of the ET–2000. By these arguments, the Shaws appear to challenge the legal sufficiency of Trinity's evidence to support the summary judgment.

■ Deposition testimony from Mary Meyland and Michael Schneider, representatives of the Texas Department of Transportation, stated that in order for a guardrail end cap to be placed on a state highway, the federal government had to approve the end cap. Both acknowledged the standards used by the federal government for approval were those found in the National Cooperative Highway Research Program (NCHRP) Report 350 and the NCHRP 230.[2] The representatives further testified that the ET family of products had met both 230 and 350 report standards. Additionally, the summary judgment record contained two letters from the Federal Highway Administration, U.S. Department of Transportation, noting that the ET–2000 end cap satisfied the appropriate NCHRP standards for barrier terminals and, based on those results, the ET–2000 end cap was permitted to be used on the National Highway System when requested by a state highway agency. We conclude this evidence is sufficient to establish Trinity's entitlement to summary judgment on the Shaws' negligent design and design defect causes of action pursuant to section 82.008(a). To the extent the Shaws assert that section 82.008 requires the standards or testing protocol to be developed or carried out by the federal government or an independent agency, the statute itself does not support such an assertion. All that section 82.008 requires is that the mandatory safety standards or regulations be adopted and promulgated by the federal government or agency, not that they be developed or that testing be carried out by the federal government or agency. TEX. CIV. PRAC. & REM. CODE ANN. § 82.008(a).[3]

---

2. These reports consisted of a series of specified crash tests.

3. In support of their position that Trinity's evidence was legally insufficient to support summary judgment under section 82.008, the Shaws rely primarily on *BIC Pen Corp. v.* *Carter,* 251 S.W.3d 500 (Tex.2008). In *BIC Pen,* however, the supreme court concluded Carter's design defect claim was preempted by federal law. *Id.* at 511. The opinion was not decided on, nor did it mention, the rebuttable presumptions created by section 82.008.

■ The Shaws also contend the trial court erred in granting summary judgment based on subsection 82.008(a) because they provided summary judgment evidence demonstrating the mandatory safety standards or regulations applied to the ET–2000 were inadequate. Subsection 82.008(b)(1) allows a plaintiff to rebut the presumption created by subsection (a) by establishing the mandatory federal safety standards applicable to the product were inadequate to protect the public from unreasonable risks of injury or damage. TEX. CIV. PRAC. & REM.CODE ANN. § 82.008(b)(1). The Shaws, however, did not make this argument in their written response to Trinity's traditional motion for summary judgment. Accordingly, this argument cannot be considered on appeal as grounds for reversal. TEX.R. CIV. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677–8 (Tex. 1979).[4]

■ The Shaws further argue that section 82.008 has no applicability to their marketing defect claim because there is no evidence of any mandatory safety standards or regulations adopted or promulgated by the federal government with respect to labeling of the end cap. We need not reach this issue, however, because we conclude Trinity was entitled to summary judgment on the Shaws' marketing defect claim on other grounds. Trinity also moved for summary judgment on this claim asserting the Shaws had no evidence that the alleged marketing defect was the producing cause of their injuries. A marketing defect occurs when a defendant knows or should know of a potential risk of harm presented by the nature of the product but markets it without adequately warning of the danger or providing instructions for safe use. *American Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 426 (Tex.1997). Among the various elements needed to prevail on a marketing defect claim, a plaintiff must establish that the failure to warn or instruct constituted a causative nexus in the product user's injury. *See USX Corp. v. Salinas*, 818 S.W.2d 473, 482–83 (Tex.App.-San Antonio 1991, writ denied).

■ On appeal, the Shaws argue, "[h]ad Trinity provided proper warnings, guidelines and instruction as to the installation and inspection of the guardrail, this tragic and horrible accident would not have happened." In support of their position, the Shaws cite a defense expert's opinion that previously sustained damage compromised the structural integrity of the guardrail and Andrew's opinion that "[i]f the guardrail system is so sensitive to the installation configuration (alignment, etc.) that it can cause the system to fail in a near 'perfect' scenario, that [sic] it seems that the design may be too sensitive to be reliable." The Shaws have provided no evidence of what the "proper warnings, guidelines and instructions" should have been, nor do they present any evidence that a warning about the guardrail system's sensitivity to the installation configuration would have prevented the harm at issue in this lawsuit. In fact, the Shaws do not argue or direct us to evidence in the record suggesting that the guardrail was

---

4. In their reply brief, the Shaws contend that during the hearing on Trinity's traditional motion for summary judgment, the Shaws' counsel specifically raised their arguments regarding 82.008 and Trinity did not object. The Shaws present no authority for their position that such a presentation preserves their argument for appeal in absence of a written response presenting the issue. In fact, the Shaws' contention directly contradicts the plain language of our summary judgment rules requiring the argument be presented in the nonmovant's written response. *See* TEX.R. CIV. P. 166a(c); *City of Houston*, 589 S.W.2d at 677.

improperly installed, maintained, or inspected.[5] Under the circumstances, the Shaws' summary judgment proof is no more than a scintilla of evidence that a marketing defect was the producing cause of the Shaws' damages. Accordingly, we conclude the trial court did not err in granting a take-nothing summary judgment on the Shaws' marketing defect claim.

■ In their last issue, the Shaws argue that the trial court erred in striking from their summary judgment evidence a printout purportedly from Trinity's website. Their entire argument under this issue consists of four sentences without reference to any legal authority. The Shaws' failure to adequately brief this issue results in the waiver of this complaint on appeal. *See* Tex.R.App. P. 38.1(h); *Howell v. T S Commc'ns, Inc.*, 130 S.W.3d 515, 518 (Tex.App.-Dallas 2004, no pet.).

Having concluded the trial court's summary judgment is supportable on the grounds noted above, we need not address the Shaws' challenges to Trinity's remaining grounds for summary judgment. We affirm the trial court's judgment.

---

**5.** Although Trinity's expert witness attributes the end cap's failure to preexisting guardrail damage downstream from initial impact, there is no evidence that this damage would have been discovered before the accident had the desired warnings or instructions been given.