**KC CUNNINGHAM, Appellant,**

v.

**Mike TARSKI and Curran Tomko Tarski, LLP, Appellees.**

**No. 05–10–01159–CV.**

Court of Appeals of Texas, Dallas.

March 27, 2012.

Patrick Kevin Leyendecker, Hilary Samantha Greene, The Leyendecker Firm, Houston, TX, for Appellant.

Jennifer R. Tillison, Alexander Dubose Jones & Townsend LLP, Houston, TX, William D. Cobb, Jr., Carrie Johnson Phaneuf, Cobb Martinez Woodward PLLC, Charles T. Frazier, Alexander Dubose Jones & Townsend LLP, Dallas, TX, for Appellee.

Before Justices BRIDGES, O'NEILL, and LANG.

## OPINION

Opinion By Justice LANG.

Appellant KC Cunningham filed this lawsuit against attorney Mike Tarski and the law firm of Curran Tomko Tarski, LLP (collectively, "Tarski") for negligent misrepresentation and assisting, participating in, and conspiring to commit shareholder oppression and breach of fiduciary duties. Cunningham's claims are based on his allegation that Tarski "falsified corporate governance documents with the intent that they be used by the majority shareholder of a close corporation to deprive the minority shareholder of his rights and then lied in his deposition about having done

so." The trial court granted Tarski's motion for traditional and no-evidence summary judgment and dismissed Cunningham's claims.

Cunningham contends the trial court erred in granting summary judgment and asserts six issues on appeal: (1) Tarski engaged in conduct that is foreign to the duties of an attorney and therefore any "immunity" based on his status as an attorney is inapplicable; (2) the majority shareholder in the corporation at issue owed fiduciary duties to Cunningham, the minority shareholder, at all relevant times; (3) Cunningham justifiably relied on a representation by Tarski; (4) Tarski failed to negate the discovery rule and Cunningham's negligent misrepresentation claim is timely; (5) there is more than a scintilla of evidence in support of Cunningham's "assisting and participating" claims; and (6) there is more than a scintilla of evidence in support of Cunningham's conspiracy claims. For the reasons stated below, we affirm the trial court's order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This dispute arises from Cunningham's ownership of stock in Specialty Blends ("SB"), a privately held Texas corporation that manufactures alcoholic beverages. In his third amended original petition, the live petition at the time of the order complained of, Cunningham stated that in January 2001, he was hired by David Tindol, a long-time friend, to operate SB's bottling plant. At that time, Tindol owned 100% of the stock in SB.

In December 2002, Tindol and Cunningham entered into a written agreement that provided, in part, for Cunningham's purchase of 45% of the shares of SB from Tindol for approximately $90,000. Pursuant to that agreement, Cunningham became a vice president of SB. Additionally,

that agreement required unanimous consent of all shareholders for (1) election of additional officers of SB, (2) any expenditure by SB in excess of $25,000, and (3) all salary adjustments in excess of 30% per year.

Cunningham alleged that in late April 2006, he and Tindol had a "falling out" after Cunningham "discovered Tindol had wrongfully used SB's funds to pay for his personal expenses." According to Cunningham, on April 27, 2006, Tindol "terminated" Cunningham's "employment and involvement with SB."

Cunningham contends that prior to April 27, 2006, and without his knowledge, Tindol retained Tarski to "advise [Tindol] and SB." According to Cunningham, Tindol and Tarski "discussed, agreed on and each committed various intentional acts designed to unlawfully deprive [Cunningham] of his rights and interest in SB." Cunningham alleges those acts included Tarski's preparation and backdating of "20 legal documents related to SB's operations and corporate governance." Cunningham asserts those documents included, in relevant part, (1) a "Memorandum of Shareholders' Agreement" (the "Memorandum") that "is dated May 11, 1998 and purportedly gives Tindol complete control over SB by virtue of the fact that it provides SB's affairs would be governed by a vote of a majority of the shares" and (2) a "Consent of the Majority Shareholder in Lieu of a Special Meeting of the Shareholders of Specialty Blends, Inc." (the "Consent") that "is dated May 11, 2005 and purports that Tindol elected himself the sole Director of SB on that date pursuant to the majority rule contained in the Memorandum." Cunningham contends that "[h]aving prepared the back dated [sic] documents for Tindol's signature alone, [Tarski] advised Tindol to sign them, which he did on or about April 26,

2006," as evidenced by (1) an email message sent by Tarski to Tindol on that date with unsigned copies of those documents attached and a cover letter telling Tindol those documents should be signed and returned and (2) a facsimile received by Tarski approximately one hour later that included signed copies of those documents. Further, Cunningham asserts that on April 28, 2006, Tarski sent documents to Cunningham's counsel that included signed copies of the Memorandum and Consent.

According to Cunningham, subsequent to terminating him, Tindol relied on the "purported majority rule" in the Memorandum and his status as the "purported sole director" to operate SB in a manner that injured Cunningham. Specifically, Cunningham contends Tindol failed to distribute SB's profits as agreed, suppressed the payment of dividends, and operated SB "in such a fashion as to enrich himself and his family at the expense of Cunningham."

In April 2007, Cunningham filed suit against Tindol in Kerr County, Texas, for, *inter alia*, breach of fiduciary duty and shareholder oppression (the "Kerr County lawsuit"). During the course of the Kerr County lawsuit, Tindol testified in a deposition that (1) he recalled signing a "bunch" of corporate documents relating to SB in 1998, a "bunch" in 2006, and a few in between; (2) he had "[n]o independent memory" of when he signed the Memorandum; and (3) the corporate documents signed by him in 2006 were created by Tarski. Additionally, Tindol stated in an affidavit in the Kerr County lawsuit that (1) in 1998, through his sister, who was acting as his attorney, he ordered a "corporate book" for SB that contained "preprinted forms" that included the Memorandum and (2) "I signed some of the preprinted forms in 1998, but, as I testified at my deposition, I cannot swear under

oath that the [Memorandum] was signed at that time. However, it was a part of the close corporation books, and irrespective of whether the formalities of signature were accomplished, it was my intent to operate in that fashion, and the corporation was operated in that fashion." Tarski testified in a deposition in the Kerr County lawsuit that he (1) did not prepare the Memorandum for Tindol's signature; (2) did not know who "typed in" the company name, Tindol's name and status, and the date information on the Memorandum; and (3) did not know when Tindol signed the Memorandum.

Cunningham asserts that during the time the Kerr County lawsuit was pending, Tindol and SB, acting on the advice of Tarski, engaged in a merger that eliminated Cunningham's 45% interest in SB and deprived Cunningham of "the fair value of his shares." Cunningham contends Tindol "relied on the Memorandum's majority rule to pass the merger over Cunningham's objection" and failed to give Cunningham proper notice of the merger.

In February 2009, Cunningham and Tindol entered into a mediated settlement agreement pertaining to the Kerr County lawsuit. Pursuant to that settlement, Tindol agreed, in relevant part, to (1) waive his attorney-client privilege respecting his interactions with Tarski and (2) allow an "ink/signature expert" retained by Cunningham to examine SB's corporate record book. Cunningham's "ink/signature expert" compared the signed Memorandum with other corporate documents that Tindol had testified in his deposition were signed by him in 2006. Cunningham's expert concluded "the black ballpoint ink that was used to create the signature on each of these documents matches."

Cunningham filed this lawsuit on March 25, 2009. He asserted claims against Tar-

ski[1] for (1) negligent misrepresentation, (2) assisting and participating in breaches of fiduciary duty, (3) conspiracy to commit breaches of fiduciary duty, (4) assisting and participating in shareholder oppression, (5) conspiracy to commit shareholder oppression, and (6) punitive damages.[2] According to Cunningham,

> [I]n sending the Memorandum and the Consent to [Cunningham], [Tarski] represented that SB had lawfully subjected its' shareholders to a majority rule at the time it was formed in 1998 and that Tindol had been lawfully elected as the sole Director of the company on May 11, 2005. [Cunningham] read the Memorandum and the Consent and relied on [Tarski's] representations that SB had lawfully subjected its shareholders to a majority rule and that Tindol had been lawfully elected as the company's sole Director as of May 11, 2005. In relying on the representations, [Cunningham] allowed Tindol to exercise control over SB throughout the remainder of 2006. [Cunningham's] reliance and inaction throughout the remainder of 2006 caused him to suffer significant damages. Because Tindol and [Tarski] concealed the true date on which the Memorandum and the Consent were signed, [Cunningham] had no way to know that such documents had been fraudulently back dated to make it appear as if Tindol had the ability to control SB by virtue of his majority shares and his status as the sole director of the company.... Tindol's acts were in contravention of the contractual and fiduciary duties owed to [Cunningham] and to

such a degree that by the end of 2006, Tindol's acts constituted an unlawful oppression and deprivation of [Cunningham's] rights and benefits of owning 45% of SB.

Additionally, Cunningham pleaded that "the discovery rule defers accrual of the statute of limitations in this case until April 11, 2007 at the earliest."

Tarski responded with a general denial answer and pleaded numerous defenses, including an assertion that "Defendants cannot be held civilly liable for damages to a non-client, such as Plaintiff, under any theory of recovery, for actions taken by Defendants in connection with their representation of their client, David Tindol." Further, Tarski specially excepted to Cunningham's causes of action for negligent misrepresentation, assisting and participating in breaches of fiduciary duty, conspiracy to commit breaches of fiduciary duty, assisting and participating in shareholder oppression, and conspiracy to commit shareholder oppression on the ground that "[a]ll of the alleged conduct made the basis of Plaintiff's claims occurred during the discharge of Defendants' duties in representing their client, David Tindol, and is absolutely protected from the liability claims asserted by Plaintiff in this case."

On July 1, 2010, Tarski filed a "Traditional and No Evidence Motion for Summary Judgment." Tarski requested traditional summary judgment as to all of Cunningham's claims and no-evidence summary judgment as to Cunningham's claims for conspiracy and "assisting and participating liability." Tarski contended

---

1. Cunningham asserts that "[a]t all relevant times, Defendant [Mike] Tarski was acting as an agent and employee of Defendant Curran Tomko and Tarski." Cunningham does not claim Curran Tomko & Tarski committed any act separate from the acts alleged to have been committed by Mike Tarski.

2. Cunningham's original petition included additional claims for "malpractice/negligence," fraud, and "equitable relief." However, those claims are not asserted in Cunningham's third amended original petition, his live petition at the time of the order complained of.

in relevant part that summary judgment in his favor on Cunningham's claims was proper because (1) "Defendants cannot be held civilly liable for damages to a non-client, such as Plaintiff, under any theory of recovery, for actions taken by Defendants in connection with their representation of Tindol" and (2) "the contents of the Memorandum and the 2005 Shareholder Consent were not as a matter of law representations by Defendants to Plaintiff." Tarski's summary judgment evidence included, *inter alia*, (1) excerpts from deposition testimony of Tindol and Cunningham; (2) the affidavit filed by Tindol in the Kerr County lawsuit; (3) various SB corporate documents; (4) an April 26, 2006 email from Tarski to Tindol with attachments that included an unsigned copy of the Memorandum; and (5) an April 28, 2006 facsimile transmittal from Tarski to Cunningham's counsel that included a signed copy of the Memorandum.

Cunningham responded, in part, that (1) the evidence raises a fact issue as to whether Tarski's conduct was "the type of fraudulent activity that is foreign to the duties of an attorney" and therefore outside the immunity protections typically afforded lawyers in suits brought by nonclients and (2) "by sending Cunningham the Memorandum, Tarski represented that the document accurately and truthfully reflected events that actually took place and that the document was valid-e.g. that on May 11, 1998 SB lawfully subjected its shareholders to a majority rule." Evidence attached to Cunningham's response included, *inter alia*, (1) excerpts from deposition testimony of Mike Tarski, including Tarski's testimony that he is familiar with Texas law governing business corporations; (2) excerpts from deposition testimony of Tindol and Cunningham, including

Tindol's testimony that he waited two years after incorporating SB in 1998 before he actually started the business and he put the corporate record book kit, which included a "non-specific, generic form of the Memorandum," in his closet in 1998 and forgot about it until he began interacting with Tarski in 2006; (3) handwritten notes of Tarski stating, in part, that SB was incorporated in 1998 with Tindol as the sole owner and Cunningham purchased a 45% interest in 2002; (4) billing statements from Tarski to SB that listed telephone conferences with Tindol in April 2006 pertaining to "control of [SB]," "options," and "corporate documents" to be sent to Tindol; (5) 2006 and 2007 emails among Tarski, Tindol, and Tindol's sister respecting the merger and Cunningham's interest in SB; (6) an April 26, 2006 facsimile that includes a signed copy of the Memorandum and is described by Cunningham as a "true and correct copy of the faxed signed copy of [the Memorandum] produced by Curran Tomko Tarski"; (7) affidavits of Robert A. Ragazzo and Robert Schuwerk, professors of law at the University of Houston Law Center; and (8) a report by Schuwerk.

In an order dated August 30, 2010, the trial court granted Tarski's motion for summary judgment and dismissed Cunningham's claims.[3] This appeal timely followed.

## II. SUMMARY JUDGMENT AS TO CUNNINGHAM'S CLAIMS

### A. Standard of Review

 We review a summary judgment de novo. *Frost Nat'l Bank v. Fernandez,* 315 S.W.3d 494, 508 (Tex.2010). To prevail on a traditional summary judgment motion, a movant has the burden of prov-

---

3. The record is silent as to a hearing on Tarski's motion for summary judgment.

ing that he is entitled to judgment as a matter of law and that there is no genuine issue of material fact. TEX.R. CIV. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995). When a defendant moves for summary judgment, he must either (1) disprove at least one essential element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of an affirmative defense, thereby defeating the plaintiff's cause of action. *See Frost Nat'l Bank*, 315 S.W.3d at 508–09; *Cathey*, 900 S.W.2d at 341. In determining whether there is a genuine fact issue precluding summary judgment, evidence favorable to the nonmovant is taken as true and the reviewing court makes all reasonable inferences and resolves all doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005); *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548–49 (Tex. 1985). A matter is conclusively established if reasonable minds cannot differ as to the conclusion to be drawn from the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex.2005). Once a movant conclusively establishes an affirmative defense, the burden of production shifts to the nonmovant to present summary judgment evidence that raises a fact issue on at least one element of the movant's affirmative defense or an exception or defense to that affirmative defense. *See Palmer v. Enserch Corp.*, 728 S.W.2d 431, 435 (Tex. App.-Austin 1987, writ ref'd n.r.e.). Where, as here, the trial court's order granting summary judgment does not specify the grounds relied upon, we must affirm the summary judgment if any of the summary judgment grounds are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex.2000).

## B. Applicable Law

Generally, "[a] lawyer is authorized to practice his profession, to advise his clients, and to interpose any defense or supposed defense, without making himself liable for damages." *Likover v. Sunflower Terrace II, Ltd.*, 696 S.W.2d 468, 472 (Tex. App.-Houston [1st Dist.] 1985, no writ); *accord Toles v. Toles*, 113 S.W.3d 899, 910 (Tex.App.-Dallas 2003, no pet.); *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405–06 (Tex.App.-Houston [1st Dist.] 2005, pet. denied). However, a lawyer's protection from liability claims arising out of representation of a client is not without limits. *Toles*, 113 S.W.3d at 911; *Alpert*, 178 S.W.3d at 406. "When an attorney acting for his client participates in fraudulent activities, his action is 'foreign to the duties of an attorney.' " *Toles*, 113 S.W.3d at 911. "Thus an attorney is liable if he knowingly commits a fraudulent act that injures a third person or knowingly enters into a conspiracy to defraud a third person." *Id.* To prove fraud, a plaintiff must show (1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and thereby suffered injury. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex.2001).

Elements of a negligent misrepresentation claim are: (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or commu-

nicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex.1999); *see also Bever Props., L.L.C. v. Jerry Huffman Custom Builder, L.L.C.*, 355 S.W.3d 878, 891 (Tex.App.-Dallas 2011, no pet.) (essential element of negligent misrepresentation claim is "existence of a representation"). The theory of negligent misrepresentation permits plaintiffs who are not parties to a contract for an attorney's services to recover from the contracting attorney in some instances. *Kastner v. Jenkens & Gilchrist, P.C.*, 231 S.W.3d 571, 577 (Tex.App.-Dallas 2007, no pet.). Specifically, such recovery is permitted when (1) "the non-client justifiably relies on the attorney's representation of a material fact" and (2) "the attorney is aware of the non-client and intends that the non-client rely on the representation." *Id.* (citing *McCamish*, 991 S.W.2d at 794).

### C. Analysis

#### 1. Negligent Misrepresentation

We begin with Cunningham's third issue, in which he contends the trial court erred by granting traditional summary judgment in favor of Tarski on Cunningham's negligent misrepresentation claim. Cunningham argues that "by sending Cunningham the Memorandum, Tarski represented that the document accurately and truthfully reflected events that actually took place and that the document was valid—e.g. that on May 11, 1998, SB subjected its shareholders to a majority rule" and Cunningham justifiably relied on that representation to his detriment. Tarski responds, in relevant part, that neither his "neutral transmission" nor the transmitted Memorandum was an actionable representation that Tarski intended for Cunningham to rely on.

The record shows that on April 28, 2006, Tarski sent eight pages via facsimile to David L. Jackson, who was counsel for Cunningham at that time. The first page of that transmission was a cover sheet identifying the sender and recipient. The second page was a cover letter from Tarski to Jackson that stated, in part

> I am transmitting herewith a copy of the last Director's Consent electing officers and the last Shareholders' Consent electing the Director. I am also transmitting herewith a copy of Mr. Cunningham's stock certification and the Memorandum of Shareholders' Agreement of Specialty Blends, Inc. I am enclosing a copy of the stock certificate for Mr. Cunningham and will send the original stock certificate and Memorandum of Shareholders' Agreement to you by courier for delivery to Mr. Cunningham after the stock certificate has been signed by David Tindol. Please deliver both the share certificate and Memorandum of Shareholders' Agreement.

Pages three through five of the transmission consisted of the Memorandum. The third page of the Memorandum stated the following: "The foregoing writing memorializes an agreement reached on the 11th day of May, 1998, by and among all the Shareholders of the Corporation, to which witness their signatures below." Immediately below that statement was a signature on a line under which was typed "David Tindol, Sole Shareholder." The remaining three pages consisted of the Consent, a "Unanimous Consent of the Directors in Lieu of an Annual Meeting of the Board of Directors of Specialty Blends, Inc.," and a stock certificate.

Cunningham asserts in his appellate brief that "[i]n light of the evidence cited above, it can reasonably be concluded that Tarski's intention in preparing the Memorandum and Consent and sending them to

Cunningham the day after Tindol fired him was to communicate to Cunningham that Tindol had the right to run the company over Cunningham's objection." It is unclear to what "evidence cited above" Cunningham is specifically referring, as there is no evidence cited in the paragraph immediately preceding that statement.[4] Additionally, Cunningham asserts that "[a]ccording to both Professors Ragazzo and Schuwerk, Tarski's act of preparing and forwarding the Memorandum to Cunningham constitutes a negligent misrepresentation."

Tarski asserts "this Court has held that the mere act of transmitting a legal document does not constitute a representation by the lawyer that the transmitted document is valid, nor does the lawyer adopt as his own the terms of the transmitted document, such that it could be treated as a representation." He argues he "simply did not make a representation to Cunningham ... that can form the basis of a negligent misrepresentation claim." Further, Tarski contends neither Ragazzo nor Schuwerk raised a fact issue as to negligent misrepresentation. In support of his arguments, Tarski cites *Kastner.* *See* 231 S.W.3d at 571.

In *Kastner,* Aaron and Sara Kastner, owners of a limited partnership interest in a partnership, asserted claims, including negligent misrepresentation, against counsel for the partnership, George Dunlap, and the firm that employed Dunlap. *Id.* at 574–75. The Kastners' claims were based on Dunlap's participation in the transaction pertaining to the purchase of the partnership's sole asset. *Id.* at 574. The trial court granted the defendants' motion for summary judgment on the Kastners' claims, and the Kastners appealed to this Court. *Id.* at 576. The Kastners acknowledged they had no attorney-client relationship with Dunlap, but contended they met the requirements established in *McCamish* for negligent misrepresentation claims by non-clients. *Id.* at 577. This Court disagreed. *Id.* at 578. This Court stated, "[T]he only communication Dunlap had with the Kastners consisted of a cover letter accompanying the partnership agreement. The cover letter contained no legal opinions or evaluations; it conveyed neutral information about the mechanics of the revisions he anticipated after the closing." *Id.* Additionally, this Court stated, "The *McCamish* court observed that when attorneys have been held liable to non-clients for negligent misrepresentation in other jurisdictions, the situation typically involved the attorney's issuance of an opinion letter or some other type of evaluation." *Id.* Then, this Court reasoned

> Regardless of origin, the mere transmission of a partnership agreement from an attorney to a non-client cannot reason-

---

4. On the pages immediately preceding that statement, Cunningham asserts arguments as to why his reliance on Tarski's "representation" was justified and, in support of those arguments, cites the facsimile described above, Tarski's handwritten notes, Tarski's billing statements to SB, and the April 26, 2006 email from Tarski to Tindol with an unsigned copy of the Memorandum attached. According to Cunningham, that evidence shows that between early 2006 and April 28, 2006, Tarski (1) was aware of the dispute between Cunningham and Tindol; (2) knew Cunningham was in control of SB's opera- tions; (3) had been conferring with Tindol regarding control of SB and analyzing the close corporation's effect on control issues; (4) provided Tindol with "options"; (5) prepared the Memorandum to reflect that SB had enacted a majority rule on May 11, 1198 for the governance of its affairs; (6) prepared the Consent to reflect that on May 11, 2005, Tindol had elected himself the sole director of SB based on the Memorandum's majority rule; and (7) sent Cunningham "the recently fabricated 'proof' of Tindol's right to control SB."

ably be construed as a legal opinion on the validity of the agreement or the propriety of investment in the partnership. We similarly reject the Kastners' attempt to characterize the contents of the partnership agreement as representations made by Dunlap. To do so would effectively require attorneys to adopt as their own the terms of—and representations made in—legal documents they prepare for their clients. Such an expansive interpretation far exceeds the scope of *McCamish* liability. *Id.*

▇▇▇ Here, as in *Kastner,* the only communication Tarski had with Cunningham consisted of a cover letter to Cunningham's counsel that was accompanied by the Memorandum and other documents. *See id.* The cover letter contained no legal opinions or evaluations. *Id.* We cannot conclude the record shows that, as alleged by Cunningham, Tarski "represented" that the Memorandum "accurately and truthfully reflected events that actually took place and that the document was valid—e.g. that on May 11, 1998, SB subjected its shareholders to a majority rule." *See id.; McCamish,* 991 S.W.2d at 793.

Further, we cannot agree with Cunningham's assertion that the expert testimony of Professors Ragazzo and Schuwerk raised a fact issue as to negligent misrepresentation. In support of that assertion, Cunningham cites paragraph twenty-seven of Ragazzo's affidavit and paragraph seventeen of the report provided by Schuwerk. In paragraph twenty-seven of his affidavit, Ragazzo stated in part

> The Merger may have been tainted by actual fraud. In April 2006, David Tindol and Michael Tarski informed KC Cunningham of the existence of the Memorandum and represented to him that it had been validly executed. If the Memorandum was first executed in April 2006, these misrepresentations constituted fraud.

Ragazzo does not specifically address negligent misrepresentation in his affidavit. Moreover, Ragazzo's opinion as to "fraud" is based on the premise that Tarski "represented" to Cunningham that the Memorandum "had been validly executed." As described above, the record does not support that premise. Accordingly, Ragazzo's affidavit raised no fact issue respecting negligent misrepresentation. *See Marathon Corp. v. Pitzner,* 106 S.W.3d 724, 729 (Tex.2003) ("Expert opinions must be supported by facts in evidence, not conjecture.").

Schuwerk stated in paragraph seventeen of his report

> 17. At the very least, the conduct discussed above amounted to a negligent misrepresentation on Mr. Tarski's part to Mr. Cunningham that (a) the [Memorandum] was genuine, in the sense that it was executed by Mr. Tindol and implemented on the date it bore; (b) it was enforceable against Mr. Cunningham by Mr. Tindol; (c) it conferred certain rights on Mr. Tindol with respect to the management of [SB] that he did not in fact have; and (d) that it excused Mr. Tindol from complying with the Texas Business Corporation Acts requirements for a merger of [SB] with another entity, when it in fact did not do so. These misrepresentations could be "negligent" if Mr. Tarski were unaware of the lack of legal effect of the document that he apparently drafted. However, Professor Ragazzo's expert opinion, on which I rely, makes it clear that that is unlikely, given that the legal rules involved in that regard are clear, and that Mr. Tarski held himself out as an expert in corporate law.

(citations and footnotes omitted). Additionally, in a footnote to that paragraph,

Schuwerk stated, "With respect to whether Mr. Tarski made *any* misrepresentation to Mr. Cunningham, I consider it of no consequence that Mr. Tarski sent the [Memorandum] to Mr. Cunningham's lawyer, rather than to Mr. Cunningham directly." (emphasis original).

Schuwerk's statements in his report demonstrate (1) his opinion relies on that of Ragazzo, which, as described above, is based on a premise not supported by the record and (2) he relies on the same unsupported premise as Ragazzo to support his opinion as to negligent misrepresentation. We conclude neither expert's opinion raised a fact issue respecting Cunningham's negligent misrepresentation claim. *See Marathon Corp.*, 106 S.W.3d at 729.

We decide against Cunningham on his third issue.

### 2. Conduct "Foreign to the Duties of an Attorney"

██ Next, we address together Cunningham's remaining claims, which include his claims for assisting and participating in breaches of fiduciary duty and shareholder oppression, conspiracy to commit breaches of fiduciary duty and shareholder oppression, and exemplary damages. In his first issue, Cunningham asserts the trial court erred by granting traditional summary judgment in favor of Tarski as to those claims because "[b]y falsifying corporate governance documents with the intent that they be used by a majority shareholder in a closely held corporation to oppress a minority shareholder's rights, and then lying under oath about having done so,"

Tarski engaged in "the type of fraudulent conduct that is foreign to the duties of an attorney" and therefore can be sued by Cunningham for damages. In addition to their pre-submission appellate briefing, both sides filed post-submission letter briefs addressing that issue. Generally, when a party moves for both traditional and no-evidence summary judgment on a claim, we first review the trial court's judgment under a no-evidence standard of review. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex.2004). However, here we will review the propriety of granting the traditional summary judgment first because it is dispositive. *See Poag v. Flories*, 317 S.W.3d 820, 825 (Tex.App.-Fort Worth 2010, pet. denied); *see also* Tex. R.App. P. 47.1.

According to Cunningham, the evidence in the record "raises a genuine issue of material fact as to whether Tarski's conduct was the type of fraudulent activity that is foreign to the duties of an attorney." Further, in his post-submission letter brief, Cunningham argues (1) the fact that he is not asserting a " 'fraud' cause of action" against Tarski is irrelevant to whether the "attorney immunity rule" shields Tarski from liability because such rule "does not require or turn on whether a particular cause of action is asserted against the attorney" and (2) "[e]ven if the immunity rule required Cunningham to assert a 'fraud' cause of action," Cunningham has met that requirement because he alleged fraudulent conduct in his live petition [5] and, alternatively, because "breach of fiduciary duty is a form of fraud."

---

**5.** Cunningham made four references to fraud in his live petition, all of which were contained in the "Factual Background" section of that petition. Specifically, he asserted (1) he had no way to know the Memorandum and Consent had been "fraudulently back dated"; (2) Tindol and Tarski committed "fraud" as to the merger "by attempting to unlawfully deprive [Cunningham] of his voice, interest in, rights and benefits associated with his 45% ownership of SB"; (3) "based on the advice, actions and substantial assistance from [Tarski], Tindol breached the duties he owed [Cunningham] and committed oppressive, fraudulent acts and breaches of fiduciary duty"; and (4) "[a]t all relevant times, [Tar-

In support of his argument, Cunningham cites four cases in which conduct by attorneys precluded them from being shielded from liability to non-clients. *See Poole v. Houston & T.C. Ry. Co.*, 58 Tex. 134, 137 (1882) (attorney was not shielded from liability for "knowingly committing wilful and premeditated frauds for another" by intercepting shipment of goods and changing label to facilitate shipment to insolvent buyer); *Essex Crane Rental Corp. v. Carter*, Nos. 01–09–00813–CV, 01–11–00688–CV, 01–11–00689–CV, 2011 WL 4599667, at *13–*14 (Tex.App.-Houston [1st Dist.] Aug. 25, 2011, no pet.) (attorney had no immunity from "knowingly drafting fraudulent documents" to evade lawful seizure of property by judgment creditor); *Querner v. Rindfuss*, 966 S.W.2d 661, 663 (Tex.App.-San Antonio 1998, writ denied) (where evidence raised fact issue as to whether attorney engaged in fraud by making and concealing improper payments during probate of estate, non-client's claims were actionable); *Likover*, 696 S.W.2d at 471 (where evidence supported finding that attorney engaged in conspiracy to defraud purchaser of property by making false representations to compel additional payments, attorney could not shield himself from liability).[6]

Tarski asserts in relevant part that the exception to attorney "immunity" claimed by Cunningham "does not apply because Cunningham has not pleaded fraud or conspiracy to defraud." According to Tarski, while "Cunningham does, in a very general manner, characterize Tarski's conduct as

'fraudulent,'" that is "altogether different from pleading and raising a fact issue on each element of a fraud claim." Additionally, Tarski argues in his post-submission brief that (1) each of the cases cited by Cunningham "involved a cause of action for and/or a finding of fraud" and (2) Cunningham's cited authority "comports with the general rule that, for an attorney's conduct to fall outside of the attorney-immunity rule, it must be either fraudulent or criminal conduct."

■■■ Even assuming without deciding that Cunningham was not required to plead a cause of action for fraud or conspiracy to defraud in order to fall within the claimed exception to attorney immunity, we cannot agree with Cunningham that the evidence in the record "raises a genuine issue of material fact as to whether Tarski's conduct was the type of fraudulent activity that is foreign to the duties of an attorney." A necessary element of fraud is a material representation by the party alleged to have acted fraudulently. *See Ernst & Young, L.L.P.*, 51 S.W.3d at 577. Thus, in order to raise a fact issue as to "fraudulent" activity by Tarski, Cunningham was required to show Tarski made such a representation. *See id.* With respect to a "representation" by Tarski, the sole argument in Cunningham's response to Tarski's summary judgment motion was that "by sending Cunningham the Memorandum [on April 28, 2006], Tarski represented that the document accurately and truthfully reflected events that

---

ski's] conduct was the kind of fraudulent activity that is foreign to the duties of an attorney."

**6.** Additionally, Cunningham cites *McKnight v. Riddle & Brown, P.C.*, 877 S.W.2d 59, 61 (Tex.App.-Tyler 1994, writ denied). In that case, the non-client plaintiff pleaded conspiracy without specifying fraud as one of the unlawful acts on which that claim was based.

*Id.* The defendant, a law firm, argued in part that, based on the attorney immunity doctrine, it could not be held liable on the non-client's conspiracy claim because the non-client failed to plead one of the elements of fraud. *Id.* The court stated that contention could not be considered on appeal because it was not raised in the law firm's summary judgment motion. *Id.*

actually took place and that the document was valid."[7] However, we concluded above that Tarski's April 28, 2006 facsimile transmittal to Cunningham's counsel did not constitute the "representation" alleged by Cunningham for purposes of Cunningham's negligent misrepresentation claim. Cunningham cites no authority, and we have found none, to support the application of a different analysis as to a "representation" for purposes of fraud. *Cf. Bever Props., L.L.C.*, 355 S.W.3d at 892 (same evidence of "representation" raised fact issue as to appellant's claims for fraud and negligent misrepresentation). Further, for the same reasons described above, we cannot agree with Cunningham that his experts' conclusions of fraud by Tarski based on that alleged "representation" constitute evidence of fraud. *See Marathon Corp.*, 106 S.W.3d at 729. The record contains no evidence as to the first element of fraud. *See Ernst & Young, L.L.P.*, 51 S.W.3d at 577. On this record, we cannot agree with Cunningham that the trial court erred by concluding there was no genuine issue of material fact as to whether Tarski's conduct was "the type of fraudulent conduct that is foreign to the duties of an attorney." We decide Cunningham's first issue against him.

## III. CONCLUSION

We decide against Cunningham on his first and third issues. Accordingly, we conclude the trial court did not err by granting Tarski's motion for summary judgment. We need not reach Cunningham's remaining issues.

The trial court's order is affirmed.

---

7. Cunningham asserts additional arguments on appeal respecting "representations" made by Tarski. However, those arguments cannot be considered as grounds for reversal because they were not included in Cunningham's response to Tarski's summary judgment motion. *See, e.g., Shaw v. Trinity Highway Prods. LLC*, 329 S.W.3d 914, 919 (Tex.App.-Dallas 2010, no pet.) (citing *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677–78 (Tex. 1979); Tex.R. Civ. P. 166a(c)); *Shih v. Tamisiea*, 306 S.W.3d 939, 944 (Tex.App.-Dallas 2010, no pet.); *see also D.R. Horton–Tex., Ltd. v. Markel Int'l Ins. Co., Ltd.*, 300 S.W.3d 740, 743 (Tex.2009) (nonmovant "must present its objections to a summary judgment motion expressly by written answer or other written response to the motion in the trial court or that objection is waived").