**AFFIRMED; Opinion Filed May 14, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-18-00019-CV**

**IN RE THE ESTATE OF WILLIAM L. MOORE, JR., DECEASED**

**On Appeal from the Probate Court No. 2**
**Dallas County, Texas**
**Trial Court Cause No. PR-17-0037-2**

## MEMORANDUM OPINION

Before Justices Myers, Molberg, and Carlyle
Opinion by Justice Carlyle

Appellants Patricia Akin, as the independent executor of the estate of William L. Moore, Jr., and Linda Lenz appeal from a summary judgment issued by the probate court in favor of Appellees Arkansas Arts Center and Arkansas Symphony Orchestra (the Arkansas Entities). We affirm. Because the issues are settled in law, we issue this memorandum opinion. *See* TEX. R. APP. P. 47.4.

### I. Background

William L. Moore, Jr. died in Dallas on August 24, 2012. He never married, and he had no children. But he executed a will in 1995, when his mother was 94 years old. The will was admitted into probate, along with two codicils, in February 2013. Akin was appointed independent executor according to the will's instructions. In the will, Moore made various specific bequests before disposing of his residuary estate in Section IV under the following terms (set out in relevant part):

I hereby give, devise and bequeath the rest and residue of my estate, real, personal or mixed, in the following manner:

\*\*\*

C. My residuary estate shall pass and vest in the Trustee hereinafter named, IN TRUST, in the following manner:

1. My residuary estate shall be held as a trust for the benefit of my mother, . . . if she is surviving at the time of my death[.]

2. The Trustee may, in its absolute discretion, pay to or for the benefit [of] my said mother part or all of the income or principal of the trust as necessary for her health, education, support and maintenance.

3. If the trust estate includes that certain apartment house located [in] Monroe, Louisiana, the Trustee shall maintain such property and shall permit my mother . . . to reside there free of rent, and to receive any income generated by the property for her lifetime or until such time as she voluntarily moves from the property.

4. The trust herein created shall terminate at the death of my said mother, . . . and the trust estate shall be distributed as follows:

    [subparagraphs a through g provide specific bequests to various individuals and charitable organizations]

    h. The balance of the trust estate after distribution of the foregoing amounts shall be distributed as follows:

        1. Fifty percent (50%) to the **ARKANSAS SYMPHONY ORCHESTRA** . . . ; and

        2. Fifty percent (50%) to the **ARKANSAS ARTS CENTER** . . . .

Moore's mother did not survive him. Akin therefore filed a petition requesting a declaratory judgment stating—among other things—that the trust created by the will did not fail because Moore's mother predeceased him, and thus the residuary estate should be distributed to the remainder beneficiaries according to the will's terms.

Akin engaged a genealogical search firm to locate Moore's heirs in the event the trust failed or the will otherwise resulted in intestacy. The search firm determined Lenz was Moore's sole heir

and issued its final report in March 2016. The next month, Akin filed an application for a determination of heirship, and an ad litem was appointed to represent Moore's heirs who either were unknown or had unknown whereabouts. The Arkansas Entities, in turn, filed a petition under § 405.001 of the Texas Estates Code for an order requiring Akin to account for and distribute Moore's estate under the will, contending the will unambiguously disposed of the residuary estate and required distribution to the trust's remainder beneficiaries.[1]

In December 2016, on its own motion, the probate court severed Akin's declaratory judgment action into a separate case. The same ad litem who was appointed to represent the unknown heirs in the probate case also was appointed to represent the unknown heirs in the declaratory judgment case. That ad litem later withdrew from both cases and was replaced in May 2017 by a different ad litem.

In June 2017, the Arkansas Entities filed a Counterclaim and Cross-Claim in the declaratory judgment case, seeking their own judgment declaring—among other things—that Moore's residuary estate should pass to the trust's remainder beneficiaries under the will. The next day, the Arkansas Entities filed a motion for summary judgment. Notably, neither their declaratory judgment petition nor their motion for summary judgment requested an order requiring immediate distribution of Moore's estate.

Akin responded to the motion for summary judgment, contending that—while she did not necessarily disagree with the Arkansas Entities' conclusion that they were entitled to the bulk of the residuary estate[2]—her request for a declaratory judgment was reasonable in light of the will's language. Moreover, she contended her request to have Moore's unknown heirs determined was reasonable because their interests could be affected by a declaratory judgment. Akin did not,

---

[1] The probate court continued the motion after a hearing in January 2017, declining to order distribution until after the will was construed.

[2] After all, Akin filed the original declaratory judgment action seeking a declaration that the residuary estate could be distributed to the trusts' remainder beneficiaries.

however, object to the probate court ruling on the motion for summary judgment before determining the unknown heirs. Instead, Akin requested a finding that her actions were reasonable and necessary.

Lenz, for her part, did not timely respond to the Arkansas Entities' motion for summary judgment. She later sought leave to file an amended answer, asking the probate court to deem it a response to the motion for summary judgment. Although the probate court denied that request, Lenz later filed an extensive letter brief outlining her legal position in opposition to the summary judgment. In that brief, Lenz did not object to the Arkansas Entities' summary judgment evidence. Nor did she object to the probate court's severing the declaratory judgment action or to its consideration of the motion for summary judgment before determining Moore's heirs.[3]

The probate court held a hearing on the Arkansas Entities' motion for summary judgment in September 2017. The ad litem for the unknown heirs, who did not file a response to the motion, informed the clerk of his intention not to appear.[4] Following the hearing, the probate court granted the motion and entered a form of judgment provided by counsel for the Arkansas Entities. In relevant part, however, the probate court made the following alterations:

- ~~Immediately~~ upon Decedent's death, Decedent's residuary estate passed under Article IV of Decedent's will as admitted to probate herein, to Patricia Akin as Trustee, to be held by her in trust (the "Trust");

MARY JUDGMENT - Page 2 of 4

*[handwritten interlineation: "IW after an administration of the estate by the Independent Executor."]*

---

[3] In fact, both Akin's and Lenz's attorneys signed Rule 11 agreements stipulating to the admissibility and consideration of the search firm's report concluding that Lenz was Moore's sole heir.

[4] Documents in the record indicate the ad litem concluded there were no unknown heirs and, thus, he had no clients to represent. Indeed, the ad litem stipulated to the admission of the genealogical search report concluding that Lenz was Moore's sole heir.

- such trust has terminated as a result of the death of Decedent's mother;

- It is the ~~present~~ duty of Patricia Akin as Trustee to distribute the Trust Estate immediately as follows:

  (i)      to Patricia Akin, $25,000;

  (ii)     to Tommy Akin, $25,000;

  (iii)    to the Dallas Opera, $10,000;

  (iv)     to Joe Perez, $5,000;

  (v)      to George Turner, $1,000; and

  (vi)     to the Arkansas Symphony Orchestra, one-half, and to the Arkansas Arts Center the other half, of the remainder of such Trust estate;

## II. Discussion

*A. The probate court construed the will correctly based on sufficient evidence.*

Lenz challenges the probate court's construction of the will on both procedural and substantive grounds. Procedurally, Lenz contends there was no evidence on which the probate court could base its judgment, because the Arkansas Entities did not attach a certified copy of the will to its motion for summary judgment. In support she relies on *Gardner v. Martin*, 345 S.W.2d 274, 276 (Tex. 1961). In *Gardner*, the supreme court held there was insufficient evidence where the summary judgment motion referred to, but did not attach certified copies of, a judgment issued in a previous case. *See id.* But the rule in *Gardner* does not apply where, as here, the document at issue was already on file in the case in which the motion for summary judgment was pending. *See Shaw v. Trinity Highway Prods., LLC*, 329 S.W.3d 914, 917 (Tex. App.—Dallas 2010, no pet.); *see also Weisberg v. London*, No. 13-02-659-CV, 2004 WL 1932748, at *6 (Tex. App.—Corpus Christi Aug. 31, 2004, no pet.) (mem. op.) ("When considering a summary-judgment motion, the trial court may judicially notice documents that are part of its record in the case at issue, since they are already on file and available for the court's consideration."); *Jones v. Jones*, 888 S.W.2d 849,

852–53 (Tex. App.—Houston [1st Dist.] 1994, writ denied) ("[I]n a summary judgment case, the trial court may judicially notice the documents and orders which are part of its record in the present case since they are . . . already on file and available for the court's consideration at the hearing." (quoting *McCurry v. Aetna Cas. & Sur. Co.*, 742 S.W.2d 863, 867–68 (Tex. App.—Corpus Christi 1987, writ denied))).

To the extent Lenz objects on the basis that the will attached to Akin's declaratory judgment petition, which was judicially noticed by the court, was not certified or authenticated, we are similarly unpersuaded. At the time Akin attached the copy of the will to her declaratory judgment petition, it was already authenticated through its admission into probate. And it would be counterintuitive to suggest a court cannot consider copies of its own records in a case before it without first certifying those records. Further, Lenz did not raise that objection before the probate court. We therefore conclude the will was properly part of the summary judgment record and provided a legally sufficient basis for the court to construe the will.

Lenz next contends the probate court substantively erred in its interpretation of the will. According to Lenz, the trust outlined in Section IV failed as a matter of law because its sole beneficiary, Moore's mother, predeceased Moore. Thus, she contends Moore's residuary estate must pass to her through intestate succession. We disagree.[5]

Our primary "objective in construing a will is to discern and effectuate the testat[or]'s intent as reflected in the instrument as a whole." *Hysaw v. Dawkins*, 483 S.W.3d 1, 7 (Tex. 2016). In doing so, we do not focus on what the testator may have meant to write; rather, we focus on the meaning of the words the testator actually used. *Id.* We must, however, construe the instrument as a whole and seek to harmonize any apparent conflicts or inconsistencies in the language. *Id.* at 4.

---

[5] We review a grant of summary judgment de novo. *See Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). Likewise, the meaning of an unambiguous will is a question of law we review de novo. *See In re Estate of Hernandez*, 2018 WL 525762, at *4 (Tex. App.—Dallas Jan. 24, 2018, no pet.) (mem. op.). Neither Lenz nor the Arkansas Entities contend the will's language is ambiguous, and we agree the instrument can be given a definite interpretation. We therefore construe the will de novo. *See id.*

Moreover, we should avoid, whenever possible, a construction that results in partial intestacy. Indeed, "[t]he mere making of a will is evidence that the testator had no intent to die intestate and creates a presumption that the testator intended to dispose of his entire estate, and that he did not intend to die intestate as to the whole or any part of his property." *Shriner's Hosp. for Crippled Children of Tex. v. Stahl*, 610 S.W.2d 147, 151 (Tex. 1980). Where, as here, a "will contains a residuary clause, the presumption against intestacy is especially strong." *Id.*

Lenz's challenge to the probate court's construction is based on two premises: (1) there were no living beneficiaries of the trust at the time of Moore's death; and (2) the trust's creation was made expressly contingent on Moore's mother surviving him. We reject both premises.

A trust beneficiary is "a person for whose benefit property is held in trust, *regardless of the nature of the interest*." TEX. PROP. CODE § 111.004(2) (emphasis added). And a beneficiary may be an individual or an entity. *Id.* § 111.004(10).

The trust at issue provides for two types of property interests—a life estate for Moore's mother and remainder interests for the other named individuals and entities. A life estate is an interest in property "held only for the duration of a specified person's life." *Knopf v. Gray*, 545 S.W.3d 542, 545 (Tex. 2018). It is created when a will's language "manifests an intention on the part of the grantor or testator to pass to a grantee or devisee a right to possess, use, or enjoy property during the period of the grantee's life." *Id.* "A remainder, in contrast, is a future interest created in the transferee that is capable of becoming a possessory estate upon the natural termination of a prior estate created by the same instrument." *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 870 (Tex. 2018). "A remainder is vested when there is a person in being who would have an immediate right to the possession upon the termination of the intermediate estate." *Caples v. Ward*, 179 S.W. 856, 857–58 (Tex. 1915). And "Texas courts will not construe a remainder as contingent when it can reasonably be taken as vested." *McGill v. Johnson*, 799 S.W.2d 673, 675 (Tex. 1990).

–7–

Here, Section IV manifests Moore's intent to create a trust for the benefit of multiple beneficiaries, including his mother and the Arkansas Entities. His mother was intended to be a life beneficiary of the residuary estate, to the extent she survived Moore, and the Arkansas Entities were intended to be beneficiaries with vested interests in the remainder of the residuary estate held in trust following the death of Moore's mother. Thus, even though the trust's life beneficiary (Moore's mother) was no longer living at the time the conveyance became operative, there were other named remainder beneficiaries sufficient to prevent the trust from failing.

We likewise are unpersuaded by Lenz's arguments that the creation of the trust itself was made expressly contingent on the survival of Moore's mother. Section IV provides: "My residuary estate shall pass and vest in the Trustee hereinafter named, IN TRUST, in the following manner . . . ." This statement is not qualified by a condition precedent; rather, it is the subsequent statement creating Moore's mother's interest in the trust that is qualified by a condition precedent: "My residuary estate shall be held as a trust for the benefit of my mother, . . . if she is surviving at the time of my death[.]" Because Moore's mother did not survive him, the condition precedent to her interest was not satisfied. Thus, her interest in the trust terminated, and the remainder interests either became present interests or became closer to present interests. *See* RESTATEMENT OF PROP. § 238 & cmt. d (AM. LAW INST. 1936) ("When a succeeding interest is not subject to a condition precedent at the moment before the termination of an interest prior thereto, then upon such termination, such succeeding interest . . . becomes . . . forthwith a present interest [or closer to a present interest depending on the circumstances], if all other prior interests which are, or might become, present interests in the affected thing have ended. . . . [I]f the prior interest is a future interest created subject to a condition precedent it can end by the fulfillment of its condition precedent becoming impossible.").

In fact, even if Moore's mother had simply been given a life interest in the trust without any condition precedent, her death still would not have defeated the interests of the remainder beneficiaries. If an attempt is made to create a prior interest in a life estate "and the measuring life ends before the conveyance becomes operative, then in the absence of a manifestation of a contrary intent, the interests subject to such attempted prior interest take effect as if no such prior interest had been limited in the creating instrument." *Crowell v. Tex. A & M Univ. Sys.*, No. 05-94-01510-CV, 1995 WL 316833, at *3 (Tex. App.—Dallas May 25, 1995, writ denied) (not designated for publication) (citing RESTATEMENT OF PROP. § 230 cmt. b, illus. 2).

The will explains what must happen upon the death of Moore's mother: "The trust herein created shall terminate at the death of my said mother, . . . and the trust estate shall be distributed as follows . . . ." On Moore's death, the residuary estate passed into a trust for the benefit of its life and remainder beneficiaries. Because the life beneficiary was no longer living, the trust immediately terminated according to its own terms, leaving the corpus to be distributed to the remainder beneficiaries. *See In re Estate of Catlin*, 311 S.W.3d 697, 703 (Tex. App.—Amarillo 2010, pet. denied). The probate court did not err by concluding that Moore's residuary estate passed into a valid trust and that it should be distributed according to Section IV.C.4 of the will.

*B. The probate court's order does not require immediate distribution.*

Unlike Lenz, Akin does not challenge the probate court's conclusion that the residuary estate must be distributed under Section IV.C.4 of the will. Akin nevertheless challenges the summary judgment to the extent it requires immediate distribution of the trust estate. According to the judgment, "[i]t is the duty of Patricia Akin as Trustee to distribute the Trust Estate immediately." Although the judgment uses the word "immediately," Akin contends the court did not intend to impose a *present* duty on her to distribute the residuary estate. She points out that the probate court specifically removed the word "present" inserted before the word "duty" in the

proposed judgment submitted by the Arkansas Entities. She further points to the fact that the probate court clarified that the residuary estate was to be held in trust "after an administration of the Estate by the Independent Executor." Akin contends these handwritten edits manifest the intent of the probate court not to require distribution to the remainder beneficiaries until after she has finished administering Moore's estate. To the extent the judgment is interpreted as imposing an immediate obligation to distribute the trust estate, Akin contends that portion of the judgment must be reversed.

In construing a judgment, we must consider the judgment "as a whole toward the end of harmonizing and giving effect to all the court has written." *Point Lookout West, Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex. 1987). Where the judgment's language is unambiguous, it must be construed in light of the literal meaning of the language used. *See Payless Cashways, Inc. v. Hill*, 139 S.W.3d 793, 795 (Tex. App.—Dallas 2004, no pet.). But if an order is ambiguous, it should be considered in light of the record and, in particular, the motion on which it was granted. *See Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 405 (Tex. 1971). Moreover, "when an ambiguous order is susceptible to two reasonable constructions, an appellate court should adopt the construction that correctly applies the law." *MacGregor v. Rich*, 941 S.W.2d 74, 75 (Tex. 1997).

The probate court's summary judgment is ambiguous. On the one hand, the plain language addressing distribution suggests Akin has a duty to distribute the trust estate "immediately." But that line must be viewed in light of the judgment as a whole, as well as the probate court's handwritten edits. The probate court struck the word "present" that was originally modifying the word "duty." Although it is possible the probate court intended to strike the word "present" merely because it viewed it as redundant in light of the word "immediately," it is also possible the trial court intended for Akin not to have a "present duty" to distribute the trust estate—that is, it may

–10–

have intended her duty to arise in the future, only after the administration of Moore's estate was finished. That interpretation would be consistent with the probate court's handwritten clarification that Moore's residuary estate was to be held in trust "after an administration of the Estate by the Independent Executor."

Further, there would be no legal basis for the probate court to order immediate distribution of the trust estate through its order resolving the Arkansas Entities' motion for summary judgment. The summary judgment was issued in a severed case where there was no request for distribution pending. More specifically, neither the petitions for declaratory judgment in the severed case nor the motion for summary judgment on which the court ruled requested an order compelling immediate distribution of the trust estate. In addition, even assuming it were legally proper, the summary judgment gives no indication of the probate court's intent to resolve the Arkansas Entities' motion for distribution that was pending in the probate case.

Under these circumstances, we decline to construe the summary judgment as imposing a present duty on Akin to distribute the trust estate. We leave it to the probate court to resolve in the first instance the Arkansas Entities' pending motion for an order requiring distribution under § 405.001 of the Estates Code.

*C. Any error attributable to severing the declaratory judgment action was harmless.*

Akin and Lenz both challenge the probate court's decision, on its own motion, to sever the declaratory judgment action into a new case. Although the probate court's reasoning for severing the action is not apparent, any error was harmless. There is no reason to believe the severance influenced the probate court's will construction (which we already have concluded was correct). Given the undisputed evidence of the genealogical search confirming Lenz is Moore's sole heir, the severance could not have posed an unacceptable risk of inconsistent judgments.

*D. The probate court did not abuse its discretion by interpreting the will before formally determining Moore's heirs.*

Finally, Akin contends the probate court abused its discretion by ruling on the summary judgment motion in the declaratory judgment action before determining Moore's heirs. Akin's argument is premised on the notion that heirs at law are indispensable parties to an action construing a will because their interests might be affected by the construction. From there, she contends the probate court was required to first determine Moore's heirs so they could be added as parties before the will was construed.

As the Arkansas Entities point out, however, the Texas Estates Code provides that a proceeding to declare heirship is authorized only under limited circumstances. *See* TEX. EST. CODE ANN. § 202.002. As relevant here, an heirship proceeding would have been authorized if Moore had died intestate. *See id.* But Moore left a will, and thus "the [Estates] Code does not authorize the probate court to determine heirship." *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 506–07 (Tex. 2010).

In any event, heirship was clear in this case. Lenz was Moore's only heir, and she was a party to the will-construction proceedings. Moreover, an ad litem was appointed to represent the interests of any unknown heirs, of which there appeared to be none. Thus, their interests were also represented during the will-construction proceedings.[6] Under these circumstances, we cannot conclude the probate court abused its discretion by first construing the will before issuing a final determination as to Moore's heirs.

---

[6] Akin questions the rigor with which the ad litem represented the interests of the unknown heirs. Yet Akin was prepared to stipulate to the probate court that there were no unknown heirs, putting her in the untenable position of asking for reversal on the basis that the interests of persons she concedes do not exist required more adequate representation.

### III. Conclusion

We affirm.

/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE

180019F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE ESTATE OF WILLIAM L. MOORE, JR., DECEASED

No. 05-18-00019-CV

On Appeal from the Probate Court No. 2, Dallas County, Texas
Trial Court Cause No. PR-17-0037-2.
Opinion delivered by Justice Carlyle.
Justices Myers and Molberg participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 14th day of May, 2019.